IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Linda J. Brumfield, | ) | |
| | ) | |
| Plaintiff, | ) | No. _____ |
| v. | ) | |
| | ) | |
| City of Chicago, | ) | |
| | ) | FILED: APRIL 9, 2008 |
| Defendant. | ) | 08CV2024     AEE |
| | | JUDGE LEINENWEBER |
| | | MAGISTRATE JUDGE COX |

## COMPLAINT

### Introduction

1. Plaintiff Linda Brumfield ("Officer Brumfield"), by and through her attorneys, Elisabeth Shoenberger and Rima Kapitan, seeks redress for race, gender and sexual orientation discrimination. This case is brought for relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, 42 U.S.C. § 1981, 42 U.S.C. § 1983 and for pendant state relief.

### Jurisdiction and Venue

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) and Section 707(e) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3) and § 2000e-6(e).

3. On November 27, 2006 Officer Brumfield timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") under Charge Number 440-2007-01346.

4. On May 17, 2007 Officer Brumfield timely filed a second charge of discrimination with the EEOC under Charge Number 440-2007-04915.

5. On December 11, 2007 Officer Brumfield timely filed a third charge of discrimination with the EEOC under Charge Number 440-2008-01244.

6. On January 10, 2008 the U.S. Department of Justice issued Officer Brumfield a Notice of Right to Sue within 90 Days for all three above-mentioned EEOC charges.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 20003-5(f)(3) because all of the unlawful employment practices alleged herein occurred in this district.

## The Parties

8. Officer Brumfield is a female homosexual African-American police officer and an employee of the City within the meaning of 42 US.C. § 2000e(f).

9. The City is an employer within the meaning of 42 U.S.C. § 2000e(b) and 42 U.S.C. § 20003 (a) and (b) with its place of business located in the Chicago, Illinois. The City is a "body politic and corporate" by virtue of city law. The Chicago Police Department ("the Department") is one of the departments that comprise the City.

10. At all relevant times, the City employed more than fifteen employees.

## Background Facts

11. Summary: The Department subjected Officer Brumfield to unlawful discrimination, retaliation and emotional distress when it charged her with several unjustified Complaint Registers ("CRs"), declined to provide her due process, issued excessive punishment, forced her to submit to four mandatory psychological evaluations,

declined to credit her for the work she did, and otherwise treated her differently than similarly-situated colleagues.

12. Officer Brumfield began her employment at the Department in October of 1999 as a police officer.

13. Officer Brumfield has excelled in her job. She received 27 complimentary letters, 20 honorable mentions, one department commendation, and one emblem of recognition in physical fitness.

14. Officer Brumfield received national recognition as well. She was elected President of the Chicago Police Women's Association in 2001. In September of 2002, the Esteemed Woman Foundation declared Officer Brumfield "one of ten esteemed women of the country." In November 2004 Being Jane, Inc. issued her the Jane of the Month award. In 2005, the National Association of Police Organizations issued her a "Top Cops Awards" Certificate of Nomination for Outstanding Achievement in law enforcement.

15. In her capacity as president of the Chicago Police Women's Association, Officer Brumfield made several public statements, some of which were published in the organization's newsletter, about the need to promote diversity and racial equality within the Department. Upon information and belief, Superintendent of Police Philip J. Cline , supervisors of Officer Brumfield and several co-workers were aware of these statements and disliked the fact that Officer Brumfield was so outspoken about these issues.

16. Officer Brumfield worked for the Department's Training Academy from January 2003 until early 2004. During her work at the Academy Officer Brumfield tried to

incorporate diversity into the work she did. In particular, she attempted to reflect the diversity of the Department in the video projects she coordinated.

17. In August 2003 a new commander took charge of the Academy and made several personnel changes. Upon information and belief, most of the personnel who were moved out of the Academy were minorities and women. Lieutenant Robert Flynn joined the Academy when the new Commander took charge.

18. Lt. Flynn resented the fact that Officer Brumfield was working to promote diversity within the Academy. When he became her supervisor he removed some of Officer Brumfield's responsibilities and assigned her fewer important projects. When she was chosen as one of ten esteemed women of the country, Lt. Flynn denied her request to go to the awards ceremony and told her she could not be "a soldier *and* a cop."

19. Lt. Flynn began to follow Officer Brumfield around and would ignore some of the paperwork she turned in. Sergeant Kevin Sadowski told Officer Brumfield that Lt. Flynn was out to get her and that she should be careful.

20. On January 7, 2004 Sergeant Sadowski wrote a request for Honorable Mentions to Commander Wayne Wiberg and Lt. Flynn proposing that several personnel receive Honorable Mentions for the work they did creating training videos for the academy. When Lt. Flynn received the letter, he refused to approve the Honorable Mentions unless Officer Brumfield's name was removed from the list, despite the fact that she was primarily responsible for creation of one of the listed videos.

21. Lt. Flynn singled out Officer Brumfield for mistreatment in other ways as well. One day when she wore her Chicago Police Women's Association jacket while standing in

4

the doorway of the building, he rebuked her and told her she could not wear the jacket in the building. Other officers who do not belong to Officer Brumfield's protected class who wore non-police uniforms were not singled out in the same way. On another occasion Officer Brumfield was wearing a skull cap and Lt. Flynn told her she looked like "one of them," referring to African-American males.

22. On October 29, 2003 Lt. Flynn falsely accused Officer Brumfield of swearing at him and calling him a racist. The charge was filed under Complaint Register # 293391. On September 28, 2005, Officer Brumfield was notified that she would be suspended for five days as a result of the charge. She served the suspension despite not having received due process.

23. In or about September of 2004, Officer Brumfield was transferred to the 24th District. The Department frequently forced Officer Brumfield to answer domestic and other high-priority calls by herself even after she called for assistance. Upon information and belief, similarly situated officers who do not share Officer Brumfield's race, gender and sexual orientation were not treated this way.

24. In October of 2005, Officer Brumfield sent a letter to Superintendent Cline suggesting ways that the Department's training and practice could be improved. In particular, she noted that diversity and cross-cultural cooperation needed to be emphasized and integrated into the training process.

25. In October of 2005 Officer Brumfield wrote a letter to Representative Jan Schakowsky expressing concerns about unfair racial representation in the district. On October 31, 2005 Commander Rottner responded to a letter Rep. Schakowsky wrote on Officer Brumfield's behalf about those concerns and expressed his belief that it

would be wrong to take race into consideration when deciding whom to place in specialized units in the 24th District.

26. On November 1, 2005 Officer Brumfield wrote a letter to Representative Rahm Emanuel addressing the "inequality of minorities and women in the Chicago Police Force." She described how her efforts to increase the Department's emphasis on diversity had been frustrated.

27. In or about November of 2005 Officer Brumfield gave a speech at a Law Enforcement Gays and Lesbians ("LEGAL") conference in Florida in which she referenced the letter she wrote to Superintendent Cline and stressed the need to improve tolerance within the law enforcement community.

28. Because of her race, gender and sexual orientation and in response to her public statements about diversity, tolerance and race relations, the City treated Officer Brumfield differently than similarly-situated employees.

29. On November 22, 2005 when Officer Brumfield called for backup on the scene of a confrontation, Sergeant Patricia Nelli arrived and proceeded to belittle, yell and swear at Officer Brumfield when Officer Brumfield attempted to explain the circumstances of the confrontation. Officer Brumfield asked Sgt. Nelli why she was always picking on her.

30. On January 18, 2006 the Department charged Officer Brumfield with CR # 309808 for allegedly being "disrespectful" to Sergeant Nelli, on November 22, 2005.

31. On July 4, 2007 Officer Brumfield was notified that she was to receive a 20-day suspension for CR # 309808. She sent the Department a Request for Superintendent

Review but never received due process, and was forced to serve 20 days of suspension in July of 2007.

32. On June 8, 2006 Officer Brumfield participated in a criminal investigation into the sexual abuse of a child in cooperation with the victim and school officials. Officer Brumfield was brought onto the case to work with the victim because the officer assigned to the case, Officer Ford, who is male and Caucasian, was having trouble understanding the victim due to cultural differences.

33. After Officer Brumfield continued the investigation and interviewed the victim, Mr. Maurice Harvey, the principal of the school, wrote a letter to the Commander of the 24th District commending Officer Brumfield on her sensitivity and professionalism during the investigation.

34. Despite the fact that her work on the case was key to the success of the investigation, Officer Brumfield was not permitted to complete the police report and the Department recognized Officer Ford, rather than Officer Brumfield, for his work on the case.

35. The Department then initiated an unwarranted internal complaint in connection with the incident against Officer Brumfield and gave her formal notification of the charge, CR # 313468, on February 7, 2007.

36. On June 9, 2006, shortly after the incident at the school, Sergeant Mary Conley of the Department's Personnel Division recommended that Officer Brumfield be ordered to submit to a mandatory psychological evaluation. Sgt. Conley stated that such an evaluation was necessary because of three complaints registered against her, identified as C.R. Nos. 313468, 293391, and 309808.

37. Officers who do not pass mandatory psychological examinations can be subject to removal from the Department. On June 12, 2006 Officer Brumfield submitted to the evaluation and was deemed fit for duty.

38. On November 27, 2006 Officer Brumfield filed EEOC Charge # 440-2007-01346.

39. On or about November 29, 2006 Officer Brumfield filed an internal complaint of discrimination with the City office now known as the Independent Police Review Authority. The City transferred the case to the Internal Affairs division of the Department for investigation and assigned it CR# 1001664. The City never remedied the discrimination of which Officer Brumfield complained.

40. On December 6, 2006 Officer Brumfield received notification that she had been charged with CR # 1000209 for having engaged in an "unjustified altercation while on duty." This complaint was registered against Officer Brumfield even though she was not the aggressor in the altercation and there were several witnesses to the incident who could have testified that she was not the aggressor.

41. On December 25, 2006 Officer Brumfield wrote a letter to Superintendent Philip Cline complaining that Lt. Flynn had treated her unfairly. The Department never remedied the unfair treatment.

42. On January 20, 2007 Officer Brumfield received notification of another charge filed against her, CR # 1001484. It was alleged that she was inattentive to duty in that she failed to properly search a prisoner, despite the fact that she received an honorable mention for her work on that day. The Department suspended her for one day as a result of this charge.

43. On February 21, 2007, Officer Brumfield was forced to submit to a second mandatory psychological examination. Officer Brumfield passed the exam.

44. On April 29, 2007 Officer Brumfield informed her supervisor, Captain Thomas Lemmer, that Pool Wagon #6167 was pulling to the right, the breaks were failing, and the inside passenger door handles and panel were missing. Captain Lemmer ordered her to drive the wagon until she was able to get a replacement. She asked Captain Lemmer to verify that the vehicle was unsafe. They both entered the vehicle. Captain Lemmer told Officer Brumfield that the only reason she was reporting the vehicle as unsafe was because she did not want to work. He grabbed her arm in an inappropriate way and made additional inappropriate remarks, including that she would drive that wagon "no matter what." In order to exit the vehicle Officer Brumfield had to force the door open, and the door banged against her lower left leg and injured her.

45. Captain Lemmer informed Officer Brumfield that if she reported the unsafe vehicle or her injury he would file a complaint against her. When Officer Brumfield made an oral report of the injury Captain Lemmer initiated CR # 1005307 against her for making a false report regarding the working condition of a vehicle and making a false report regarding an injury.

46. On May 17, 2007 Officer Brumfield filed EEOC charge # 440-2007-04915.

47. On May 21, 2007 the Department subjected Officer Brumfield to her third mandatory psychological examination, ostensibly because she had filed a leg injury report. Officer Brumfield passed the exam.

48. On May 25, 2007 Susan Conley, the Director of Police and Fire Claims, unjustifiably denied Officer Brumfield's Injury on Duty claim.

49. On May 31, 2007 Officer Brumfield was notified that she would be suspended for eight days due to CR # 1000209. She requested that the decision be reviewed in the Discipline Screening Program. She has not yet received due process on this charge.

50. On July 3, 2007 the Department charged Officer Brumfield with CR # 1007211, alleging that Officer Brumfield engaged in an unjustified altercation with a civilian while off-duty and attempted to use her position with the Department for personal gain.

51. On July 4, 2007 the Department stripped Officer Brumfield of her police powers.

52. On August 8, 2007 the Department subjected Officer Brumfield to a fourth mandatory psychological examination. Officer Brumfield passed the exam.

53. On October 16, 2007 the Department notified Officer Brumfield that she was to be suspended for 180 days for CR # 313468.

54. The Department's actions caused Officer Brumfield severe emotional distress and irreparable harm to her career.

## COUNT I:
### (Title VII: Discrimination and Retaliation)

55. Paragraphs 1-54 are restated herein.

56. The City intentionally discriminated and retaliated against Officer Brumfield in violation of 42 U.S.C. § 2000e *et seq.*, as amended.

57. The City's unlawful actions have caused Officer Brumfield emotional distress, irreparable damage to her career, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE Officer Brumfield respectfully requests:

A. All wages and benefits she would have received but for the discrimination and retaliation;

B. Compensatory damages;

C. Attorney's fees and costs; and

D. Such other relief as law and justice allow.

## COUNT II:

## (42 U.S.C. § 1983)

58. Paragraphs 1-54 are restated herein.

59. The City, acting under color of Illinois and Chicago law, subjected Officer Brumfield to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States when it intentionally made adverse employment decisions based on Officer Brumfield's color (race), gender and sexual preference in violation of the equal protection clause of the fourteenth amendment to the United States Constitution.

60. The City's unlawful actions have caused Officer Brumfield emotional distress, irreparable damage to her career, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE Officer Brumfield respectfully requests:

A. All wages and benefits she would have received but for the discrimination and retaliation;

B. Compensatory damages;

C. Attorney's fees and costs; and

D.    Such other relief as law and justice allow.

## COUNT III:

## (42 U.S.C. § 1981)

61. Paragraphs 1-54 are restated herein.

62. The City deprived Officer Brumfield of her right to full and equal benefit of the City's regulations and proceedings for the security of her employment because of Officer Brumfield's color (race) in violation of 42 U.S.C. § 1981.

63. The City's unlawful actions have caused Officer Brumfield emotional distress, irreparable damage to her career, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE Officer Brumfield respectfully requests:

A.    All wages and benefits she would have received but for the discrimination and retaliation;

B.    Compensatory damages;

C.    Attorney's fees and costs; and

D.    Such other relief as law and justice allow.

## COUNT IV:

## (Illinois Human Rights Act)

64. Paragraphs 1-54 are restated herein.

65. The above acts constitute civil rights violations within the meaning of the Illinois Human Rights Act.

66. The City's unlawful actions have caused Officer Brumfield emotional distress, irreparable damage to her career, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE Officer Brumfield respectfully requests:

    A.    All wages and benefits she would have received but for the discrimination and retaliation;

    B.    Compensatory damages;

    C.    Attorney's fees and costs; and

    D.    Such other relief as law and justice allow.

## COUNT V:

### (Intentional Infliction of Emotional Distress)

67. Paragraphs 1-54 are restated herein.

68. The City, by and through its officers and employees, intended to cause severe emotional distress to Officer Brumfield.

69. The City's conduct was extreme, outrageous, and beyond the bounds of moral decency.

70. The City's conduct was so outrageous that no reasonable person could be expected to endure it.

71. As a result of the City's conduct, Officer Brumfield suffered severe emotional distress, mental anguish, anxiety, humiliation, depression and physical damage.

WHEREFORE Officer Brumfield respectfully requests that this Court award damages in an amount sufficient to compensate Officer Brumfield for the damages she suffered and the costs of this action.

## JURY DEMAND

Plaintiff requests trial by jury.

Dated: April 9, 2008

Respectfully Submitted,

| | |
|---|---|
| s/ Elisabeth Shoenberger | s/ Rima Kapitan |
| | |
| Elisabeth Shoenberger | Rima N. Kapitan |
| Shoenberger Law Offices | Amal Law Group, LLC |
| 2036 W. Cuyler | 7804 College Drive, Suite 3N |
| Chicago, IL  60618 | Palos Heights, IL  60463 |
| (773) 892-2122 | (708) 361-3600 |
| Fax: (773) 404-5794 | Fax: (708) 361-3674 |
| Attorney #: 6243879 | Attorney #: 6286541 |
| Shoenberger@earthlink.net | rkapitan@amallaw.com |