## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LINDA J. BRUMFIELD | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 2024 |
| v. | ) | |
| | ) | Judge Leinenweber |
| CITY OF CHICAGO, | ) | |
| | ) | Magistrate Judge Cox |
| Defendants. | ) | |
| | ) | JURY DEMANDED |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S  MOTION TO DISMISS IN PART PLAINTIFF'S COMPLAINT AND TO STAY TIME TO ANSWER

Defendant City of Chicago (the "City"), by its attorney Mara S. Georges, Corporation Counsel of the City, submits this memorandum of law in support of its motion to dismiss in part plaintiff Linda Brumfield's ("plaintiff") complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and to stay the time to answer the remaining claims pending the ruling on this motion.

## INTRODUCTION

On April 9, 2008, plaintiff filed a five-count Complaint against the City.  (Complaint ("Cmplt.")) In Count I of her Complaint, plaintiff alleges that the City discriminated[1] and retaliated against her in violation of Title VII of the Civil Rights Act of 1964.  (Cmplt. ¶¶ 55-57) In Count II,  plaintiff alleges that the City "intentionally made adverse employment decisions" based on plaintiff's race (African-American), gender and sexual preference in violation of 42 U.S.C. § 1983.  ( Id. at ¶¶ 58-60)  In Count III, plaintiff alleges that the City deprived her of the security of her employment because of her color (race) in violation of 42 U.S.C. § 1981.  (Id. at ¶¶ 61-63)  In Count IV, plaintiff alleges violations of the Illinois Human Rights Act ("IHRA").  In  Count V, plaintiff alleges a state law claim for intentional infliction of emotional distress ("IIED").  (Id. at ¶¶ 67-71)   Plaintiff also seeks all wages and benefits she would have received but for the alleged discrimination and retaliation, compensatory damages, and costs and attorney

---

[1]    Plaintiff did not specify on what basis she claims she was discriminated against.

fees.

The City moves to dismiss in part plaintiff's complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. To the extent plaintiff's Title VII claims of discrimination and retaliation are based on sexual orientation in Count I, they should be dismissed with prejudice because Title VII does not provide a cause of action for discrimination based on sexual orientation. This Court should also dismiss with prejudice plaintiff's Title VII claims in Count I to the extent that they are based on alleged conduct that occurred outside the 300-day limitations period provided for under Title VII.

Plaintiff's Section 1981 and Section 1983 claims in Counts II and III should be dismissed in their entirety for failure to state a claim against the City under Monell v. Dept. of Social Services, 436 U.S. 658, 690-91 (1978), because plaintiff did not alleged that a City policy, practice or custom caused plaintiff's alleged constitutional deprivations. Moreover, the Court should dismiss with prejudice plaintiff's Section 1981 and 1983 claims to the extent that they are based on allegations that occurred outside the applicable four-year and two-year statutes of limitations for those claims.

Plaintiff's state law claims should also be dismissed. Plaintiff fails to state a claim in Count IV because plaintiff has not alleged that she exhausted her administrative remedies under the IHRA, which is fatal to her claim. Count V of the complaint should be dismissed for lack of subject matter jurisdiction because the IHRA and Worker's Compensation Act ("IWCA") preempt plaintiff's claim for intentional infliction of emotional distress. Moreover, even if her claim were not preempted, Count V should be dismissed for failure to state a claim because plaintiff fails to sufficiently allege extreme and outrageous conduct by the City, nor does she allege that the City's actions in fact caused her severe emotional distress.

The City requests that the time to answer all claims should be stayed pending ruling on this motion to dismiss.

## PROCEDURAL HISTORY

On November 27, 2006, plaintiff cross-filed charges of employment discrimination against the City with the Illinois Department of Human Rights ("IDHR") and the United States Equal Employment Opportunity Commission ("EEOC"). (EEOC Charge No. 440-2007-01346,

attached hereto in Group Exhibit A, p.1)[2]   In her EEOC Charge, plaintiff alleged that since October 2003 she had been subjected to harassment in the form of excessive and derogatory remarks about her clothing because of her race and sex.  Id.  Plaintiff further alleged she was subjected to a medical and psychological exam in June 2006 and disciplined on or about August 24, 2006, October 30, 2006 and November 26, 2006.  Id.  On December 11, 2007, plaintiff cross-filed another charge of employment discrimination against the CPD alleging that she engaged in protected activity and was retaliated against in the form of: "unwarranted disciplinary actions"; being "placed on mandatory medical, stationary status and subjected to psychological exams"; being "stripped of police powers"; and, being "removed from the department bidding process." (EEOC Charge No. 440-2008-01244, attached hereto in Group Exhibit A, pg. 2)  On May 17, 2007, plaintiff cross-filed a third charge of employment discrimination against the CPD alleging that she had been retaliated against by not receiving a transfer "until [she] bid for it," being subjected to discipline, being required to submit to psychological and medical evaluations, being "forced" to drive an unsafe vehicle and being ordered to submit to a  mandatory fitness for duty exam.   (EEOC Charge No. 440-2007-04915, attached hereto in Group Exhibit A, pg. 3)

On or about January 10, 2008, the EEOC issued plaintiff Right-to-Sue Letters for plaintiff's three EEOC Charges.  (See Plaintiff's Right-to-Sue Letters, attached hereto as Group Exhibit C)

---

[2]    Although plaintiff did not attach her charges to her Complaint, this Court can consider its contents on a motion to dismiss.  See generally Venture Assocs. Corp. v. Zenith Data Sys., 987 F.2d 429, 431 (7th Cir. 1993). An EEOC charge is central to a plaintiff's discrimination claim. See Perkins v. Univ of Illinois at Chicago, No. 95 C 4320, 1995 WL 680758, at *3 (N.D. Ill. Nov. 14, 1995) (all unpublished Westlaw cases will be attached hereto as Group B in the order they appear in this brief .) ( "EEOC charges are documents that, if not attached to the complaint, are central to plaintiff's claim and so can be considered if referred to in the complaint and attached to defendant's motion to dismiss." ).

## STATEMENT OF FACTS[3]

### Plaintiff's Employment at the Training Academy[4]

In or around October 1999, plaintiff began her employment with the CPD as a police officer.  (Cmplt., at ¶ 12)  From January 2003 to early 2004, plaintiff worked for the CPD's Training Academy ("the Academy").  (Cmplt., at ¶ 16)  Plaintiff alleges that in August 2003, the Academy made personnel changes, one of whom was Lieutenant Robert Flynn.  (Cmplt., at ¶ 17)  Plaintiff alleges that Lt. Flynn "resented the fact that Officer Brumfield was working to promote diversity within the Academy" (Cmplt., at ¶ 18), and that he singled her out for "mistreatment" in a variety of ways.  (Cmplt., at ¶¶18-22)  For example, Lt. Flynn allegedly "followed [plaintiff] around" and "would ignore some of the paperwork she turned in"  (Cmplt., at ¶ 19); told plaintiff that she looked like "one of them," referring to African-American males, because she was wearing a skull cap (Id.); refused to approve an Honorable Mention for her (Cmplt., at ¶ 20); accused plaintiff of swearing at him and calling him a racist and filed a Complaint Register ("CR") against her (Cmplt., at ¶ 22)  On September 28, 2005, plaintiff was notified that she would be suspended for five days as a result of that CR.  Id.

### Plaintiff's Employment at the 24th District

In or about September 2004, plaintiff was transferred to the CPD's 24th District.  (Cmplt., at ¶ 23)  Plaintiff alleges that the CPD "forced [her] to answer domestic and other high-priority calls by herself," even after she called for assistance.  Id.  Plaintiff alleges that similarly situated officers who do not share plaintiff's race, gender and sexual orientation were not treated this way.  Id.  In October and November 2005, plaintiff sent letters to CPD Superintendent Philip Cline, U.S. Representative Jan Schakowsky and U.S. Representative Rahm Emanuel suggesting ways the CPD's training could be improved through diversity and cross-cultural cooperation, expressing concerns about unfair racial representation in the 24th District, and addressing the

---

[3]    Plaintiff's allegation in the Complaint are taken as true only for the purposes of this motion to dismiss.  Stevens v. Umstead, 131 F.3d 697, 706 (7th Cir. 1997).

[4]    Due to the various statutes of limitations invoked in the City's motion, and for clarity purposes, the City organized the Statements of Facts portion of this memorandum according to Plaintiff's work assignments at the CPD in an effort to categorize the alleged adverse actions by time period.

"inequality of minorities and women in the Chicago Police Force."  (Cmplt., at ¶¶ 24-26)
Plaintiff also spoke at a Law Enforcement Gays and Lesbians ("LEGAL") conference in Florida
in which she referenced one of these letters.  (Cmplt., at ¶ 27)  Plaintiff claims that "because of
her race, gender and sexual orientation and in response to her public statements about diversity,
tolerance and race relations," the CPD treated her differently than similarly-situated employees.
(Cmplt., at ¶ 28)

       On November 22, 2005, plaintiff alleges she called for backup at the scene of a
confrontation and Sergeant Patricia Nelli arrived and began to "belittle, yell and swear"at
plaintiff.  (Cmplt., at ¶ 29)  On January 18, 2006, the CPD charged plaintiff with a CR for being
insubordinate and she received a 20-day suspension.  (Cmplt., at ¶¶ 30-31)

       On June 12, 2006, plaintiff submitted to a mandatory psychological evaluation because
she had three CR's initiated against her.  (Cmplt., at ¶ 36-37)  On November 29, 2006, plaintiff
filed an internal complaint with the CPD's Independent Police Review Authority.  (Cmplt., at ¶
39.)  Between December 6, 2006 and February 7, 2007, plaintiff alleges that three additional
CR's were initiated against her.  (Cmplt., at ¶¶  32-36, 40, 42)  On February 21, 2007, plaintiff
claims she was forced to submit to a second mandatory psychological exam.  (Cmplt., at ¶ 43)

### Plaintiff's Employment at Other CPD Districts

       On April 27, 2007, plaintiff alleges that Captain Thomas Lemmer ordered her to drive a
vehicle that was unsafe, and threatened to file a complaint against her if she reported the vehicle.
(Cmplt., at ¶¶ 44-45)  Plaintiff further alleges that she was injured on duty while trying to exit the
unsafe vehicle and Captain Lemmer initiated a CR against her for making a false report regarding
the working condition of a vehicle and making a false report regarding an injury.  Id. at 44, 45.
On May 21, 2007, the CPD submitted plaintiff to a third mandatory psychological exam. (Cmplt.,
at ¶ 47)  On July 3, 2007, the CPD initiated another CR against plaintiff for an unjustified
altercation with a civilian while off duty and for using her position with the CPD for personal
gain, and plaintiff was subsequently stripped of her police powers.  (Cmplt., at ¶¶ 50-51)  On
August 8, 2007, plaintiff submitted to a fourth mandatory psychological examination.  (Cmplt., at
¶ 52)  On October 16, 2007, plaintiff was notified that she would be suspended for 180 days.
(Cmplt., at ¶ 53)

## MOTION TO DISMISS STANDARDS

The City brings this Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  When considering a motion to dismiss, the court must assume all well-pleaded factual allegations in the complaint as true and must liberally construe the complaint in favor of the plaintiff.  Stevens v. Umstead, 131 F.3d 697, 706 (7th Cir. 1997). However, this does not mean that a court should ignore facts set forth in a complaint which "undermine the plaintiff's claim," nor should it "assign any weight to unsupported conclusions of law." Scott v. O'Grady, 975 F.2d 366, 368 (7th Cir. 1992).  In deciding a Rule 12(b)(6) motion, the court can consider any documents incorporated or referenced in the complaint, such as plaintiff's EEOC Charge and Right-to-Sue Letter.  See Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002); Menominee Indian Tribe of Wis. v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998), cert. denied, 526 U.S. 1066 (1999).  In order to survive a motion to dismiss for failure to state a claim, each claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief.  See Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1974 (2007).

On a 12(b)(1) motion, it is the plaintiff's burden to establish jurisdiction and he must support his allegations with competent proof.  See Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673 (1942); Kontos v. United States Dep't of Labor, 826 F.2d 573, 576 (7th Cir. 1987).

## ARGUMENT

I.      COUNT I OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED IN PART

     A.      **Plaintiff's Title VII Claims Should Be Dismissed With Prejudice to the Extent They Are Based On Allegations of Sexual Orientation Discrimination or Retaliation Should be Dismissed with Prejudice.**

It is well-settled that Title VII does not provide a private right of action based on sexual orientation discrimination or retaliation.  See Schroeder v. Hamilton Sch. Dist., 282 F.3d 946, 951 (7th Cir. 2002) (citing Spearman v. Ford Motor Co., 231 F.3d 1080, 1086 (7th Cir. 2000); Hamner v. St. Vincent Hosp. & Health Care, Inc., 224 F.3d 701, 704 (7th Cir. 2000)).  Thus, this Court should dismiss with prejudice Count I of plaintiff's complaint to the extent it is based on allegations of discrimination or retaliation based on her sexual orientation.

**B.      Any Alleged Discriminatory Acts Supporting Plaintiff's Title VII claim that Occurred More Than 300 Days Before Plaintiff Filed Her EEOC Charge Should Be Dismissed as Untimely.**

Title VII requires that an individual file an EEOC charge within 300 days of the alleged discriminatory conduct.  42 U.S.C. § 2000e-5(e)(1); See Lewis v. City of Chicago, 528 F.3d 488 (7th Cir. 2008); Bullard v. Sercon Corp., 846 F.2d 463, 467-68 (7th Cir. 1988); Winters v. Iowa State Univ., 768 F. Supp. 231, 237 (N.D. Ill. 1991), aff'd 962 F.2d 11 (7th Cir. 1992).  Because memories may fail concerning the minutia of what was said and done in the workplace, the 300-day time restriction requires that employment discrimination claims be filed without undue delay. Sanders v. Venture Stores, Inc., 56 F.3d 771, 775 (7th Cir. 1995).  Failure to timely file a charge with the EEOC will bar a plaintiff from later litigating the same claims under Title VII.  Beamon v. Marshall & Ilsley Trust Co., 411 F.3d 854, 860 (7th Cir. 2005).  The 300-day period begins to run from the date the employee is aware of the adverse employment action.  Delaware State Coll. v. Ricks, 449 U.S. 250, 257-60 (1980); Stark v. Dynascan Corp., 902 F.2d 549, 551 (7th Cir. 1990).  Thus, a plaintiff who is aware of his injury is not allowed to wait to file until the time he becomes aware of its unlawful nature.  Chakonas v. City of Chicago, 42 F.3d 1132, 1136 (7th Cir. 1994).

This Court should dismiss any allegations of discrimination that occurred between August 2003 and January 31, 2006.  Specifically, plaintiff's allegations of discrimination that allegedly took place while she worked at CPD's Training Academy and any allegations pertaining to the time plaintiff worked at the 24th District all occurred outside of the 300-day time restriction and asa result should be dismissed.  Plaintiff filed her first EEOC Charge on November 27, 2006; therefore, any alleged discrimination that occurred more than 300 days prior to November 27, 2006, are not timely and should be dismissed.

## II.     PLAINTIFF'S SECTION 1981 AND SECTION 1983 CLAIMS SHOULD BE DISMISSED

### A.     Plaintiff's Section 1981 And Section 1983 Claims Should Be Dismissed Pursuant To Rule 12(b)(6) For Failure To State A Claim Under <u>Monell</u>.

It is well established that a municipality cannot be held vicariously liable under Section 1983 for the acts of its employees.  <u>Monell v. New York City Dept. of Soc. Servs.</u>, 436 U.S. 658, 694 (1978).  Rather, municipal liability under Sections 1981 and 1983 requires a plaintiff to allege a constitutional injury resulting as a direct result from a municipal policy, custom or practice.  <u>Monell</u>, 436 U.S. at 692; <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989); <u>McCormick v. City of Chicago</u>, 230 F.3d 319, 324 (7th Cir. 2000).  Municipalities may be held liable under Sections 1981 and 1983 only for acts which the municipality has officially sanctioned or ordered. <u>Fiorenzo v. Nolan</u>, 965 F.2d 348, 350 (7th Cir. 1992).  The Seventh Circuit has held that a municipality must be the "moving force" directly causing the alleged injury before the municipality may be held liable.  <u>Hulbert v. Wilhelm</u>, 120 F.3d 648, 656 (7th Cir. 1997).

To state a municipal policy claim, a plaintiff must allege either an express municipal policy that, when enforced, deprived plaintiff of a constitutional right; a widespread municipal practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or that plaintiff's alleged constitutional injury was caused by a person with final policymaking authority.  <u>McCormick</u>, 230 F.3d at 324-25; <u>Juniel v. Park Forest-Chicago Heights Sch. Dist. 163</u>, 176 F. Supp.2d 842, 848-49 (N.D. Ill. 2001). Because plaintiff's complaint does not allege any of these three scenarios, plaintiff has failed to properly plead a municipal policy claim.

For example, although plaintiff's complaint purports to allege violations of Sections 1981 and 1983, she fails to identify any "express municipal policy" or a "widespread municipal practice" that deprived her of a constitutional right, or allege that her purported constitutional injuries were caused by persons with "final policymaking authority."  Accordingly, because plaintiff fails to allege a municipal policy for which the City could be held liable, this Court

should dismiss plaintiff's race claim under Sections 1981 and her race, gender and sexual preference claims under Section 1983.

    **B.**       **Applicable Statutes of Limitation Bar Plaintiff From Litigating Any Untimely Allegations.**

     Section 1981 claims are subject to a four year statute of limitations.  Jones v. R.R. Donnelley & Sons Co., 541 US 369, 383-84, (2004).  Section 1983 claims are subject to a two-year statute of limitations in Illinois.  Licari v. City of Chicago, 298 F.3d 664, 667-68 (7th Cir. 2002).  Plaintiff filed her complaint on April 9, 2008. (Complt.)  Accordingly, any allegations of race discrimination supporting her Section 1981 claim that occurred more than four years before April 9, 2008 are time-barred.  Similarly, any discrimination allegations that form the basis of her Section 1983 claim that occurred before April 10, 2006, are likewise time-barred.  Therefore, the Court should dismiss plaintiff's Section 1981 allegations of discrimination while she worked at the CPD's Training Academy that are before April 9, 2004 with prejudice.  Similarly, the Court should dismiss plaintiff's Section 1983 allegations of discrimination while she worked at the CPD's Training Academy with prejudice.  The Court should also dismiss plaintiff's Section 1983 allegations while she worked at the 24th District with prejudice to the extent they are based on allegations that occurred before April 10, 2006.

**III.**    **PLAINTIFF'S CLAIM UNDER THE ILLINOIS HUMAN RIGHTS ACT SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

     In order to invoke the protections of the IHRA, a plaintiff must comply with its provisions. Shelton v. Ernst & Young, LLP., 143 F. Supp.2d 982, 990 (N.D. Ill. 2001).  It is well settled that the IHRA does not allow a complainant direct access to the court system.  Allen v. City of Chicago, 828 F.Supp. 543, 559 (N.D. Ill. 1993).  Instead, a complainant must first file a charge with the IDHR, and the Illinois Human Rights Commission has exclusive jurisdiction over civil rights actions brought under the IHRA.  See Manley v. City of Chicago, 236 F.3d 392, 397 (7th Cir. 2001).  Therefore, plaintiff may not file a court action for her IHRA discrimination claim without exhausting her state administrative remedies.  See Talley v. Wash. Inventory Serv., 37 F.3d 310, 312-13 (7th Cir. 1994).  It is necessary for plaintiff to allege that the administrative

remedies provided in the IHRA have been exhausted in order to properly state a claim.  Shelton, 143 F.Supp.2d at 990.  Exhausting administrative proceedings before the EEOC does not satisfy the IHRA requirement.  See Scott v. Sears, Roebuck and Co., 605 F.Supp. 1047, 1053 (N.D. Ill. 1985), aff'd, 798 F.2d 210 (7ᵗʰ Cir. 1986).

Plaintiff has failed to state a claim under the IHRA.  She alleges in her complaint that she timely filed three EEOC charges of discrimination and received a Notice of Right-to-Sue for those charges.  (Cmplt., at ¶¶ 3-5)  However, plaintiff does not allege that the administrative remedies provided in the IHRA have been exhausted.  Shelton, 143 F.Supp.2d at 990. Therefore, plaintiff's IHRA claim should be dismissed because she has not satisfied the IHRA exhaustion requirement and this Court therefore lacks jurisdiction over her IHRA claim.

## IV.    COUNT V OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

### A.    The Illinois Human Rights Act Preempts This Court's Jurisdiction Over Plaintiff's Intentional Infliction Of Emotional Distress Claim.

Section 8-111(c) of the IHRA provides that "no court of this state shall have jurisdiction over the subject matter of an alleged civil rights violation."  775 ILCS 5/8-111(c) (2002).  This means that claims that fall within the IHRA's definition of a civil rights violation must be brought before the IHRC before seeking review in the courts.  Geise v. The Phoenix Company of Chicago, Nic., 639 N.E.2d 1273, 1277 (1994).  A "civil rights violation" under the IHRA is defined as follows:

> It is a civil rights violation . . .[f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status.

775 ILCS 5/2-102(A) (2002).  The Illinois Supreme Court has made clear that the IHRA divests courts of jurisdiction not only over claims of civil rights violations, but also over tort claims that are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself."  Maksimovic v. Tsogalis, 687 N.E.2d 21, 23 (1997).

Plaintiff's tort claim here seeks redress for what is essentially a violation of her rights under the IHRA. Plaintiff has not identified the conduct alleged to have caused her extreme emotional distress other than general allegations of adverse actions taken against her because of her "race", "gender" and "sexual orientation." Accordingly, there is no IIED claim here absent plaintiff's claims of discrimination and this Court lacks subject matter jurisdiction over plaintiff's IIED claim and it should be dismissed with prejudice pursuant to Rule 12(b)(1). See Quantock v. Shared Marketing Services, Inc., 312 F.3d 899 (IIED claims rejected where supported by same factual allegations as Title VII claim); See also Geise., 639 N.E.2d at 1277) (finding that tort claims inextricably linked to the concept of Title VII claims are preempted by the IHRA).

**B.    The Illinois Workers' Compensation Act Bars Plaintiff From Suing The City For Intentional Infliction of Emotional Distress.**

The intent of the IWCA is to provide financial security to employees for injuries arising out of and in the course of their employment. Meerbrey v. Marshall Field & Co., 564 N.E.2d 1222, 1225 (Ill. 1990). "[T]he Act imposes liability without fault upon the employer and, in return, prohibits common law suits against the employer. The exclusive remedy provision 'is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, [it] is relieved of the prospect of large damage verdicts.'" Id., citing 2A A. Larson, Law of Workmen's Compensation § 65.11 (1988). Illinois federal and state courts have held uniformly that an employee seeking relief for injuries received through tortious acts committed by fellow employees must proceed under the IWCA. Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1016 (7th Cir. 1997); Meerbrey, 564 N.E.2d at 1226-28.

The IWCA contains an exclusivity provision that bars employees from bringing common law claims and statutory actions against employers based on respondent superior liability for accidental injuries sustained during the course of employment. Contreras v. Suncast Corp., 129 F.Supp.2d 1173, 1183 (N.D. Ill. 2001); Richardson v. County of Cook, 621 N.E.2d 114, 118 (Ill. App. 1st Dist. 1993). The exclusivity provision bars tort actions against employers unless a

plaintiff alleges that: (1) the injury was not accidental; (2) did not arise from her employment; (3) was not received during the course of employment; or (4) was not compensable under the IWCA. Meerbrey, 139 Ill.2d at 463, 564 N.E.2d at 1226; Collier v. Wagner Castings Co., 408 N.E.2d 198, 202 (Ill. 1980).

The IWCA's exclusivity provision precludes plaintiff from maintaining an IIED claim against the City.  Plaintiff has not alleged that her IIED claim falls within any of the exceptions to the IWCA's pre-emptive bar. Plaintiff does not assert that her alleged injuries were not "accidental."  The fact that plaintiff  has averred that her fellow employees intended to cause her emotional distress is irrelevant for purposes of the IWCA.   Hunt-Golliday, 104 F.3d at 1016; Ostendorf v. Elkay Mfg. Co., No. 94 C 50170, 1994 WL 741425, at *3 (N.D. Ill. Dec. 29, 1994) (Reinhard, J.) (noting that labeling a claim as "intentional" will not suffice for purposes of IWCA preemption) (attached hereto as Group Exhibit B).  Even the intentional injury of one employee by another employee is "accidental" with respect to the employer if: (1) the injury was unexpected and unforeseen by the injured employee and (2) the employer did not expressly authorize the intentional injury.  Id.  As explained by the Illinois Supreme Court, "[b]ecause injuries intentionally inflicted by a co-worker are accidental from the employer's point of view, the employer has a right to consider that the injured employee's sole remedy against the employer be under the workers' compensation statute."  Meerbrey, 564 N.E.2d at 1226.

To establish that her injury was not an accident, plaintiff must allege that the City or its alter ego intentionally inflicted, commanded or expressly authorized the injurious acts.  Juarez v. Ameritech Mobile Communications, 957 F.2d 317, 324 (7th Cir. 1992); Meerbrey, 564 N.E.2d at 1226-27.  Plaintiff has not alleged that the City or its alter ego committed or expressly authorized any individual to commit any of the alleged acts that give rise to plaintiff's IIED claim.  (See Complt.)  Actual or constructive knowledge of a supervisor's behavior is not the same as specifically commanding or expressly authorizing an intentional tort by an employee.  See Robinson v.  Roney Oatman, Inc., No. 97 C 8964, 1999 WL 1102694, at *13-14 (N.D. Ill. Nov. 23, 1999) (Hibbler, J.)(attached hereto as Group Exhibit B).

Also, plaintiff does not allege that her injuries did not arise from her employment or were not received during the course of her employment.  Indeed, according to plaintiff's complaint, the

12

conduct that led to her alleged injuries occurred at work. Illinois federal and state courts have held that being discriminated against is a risk inherent in the workplace. Rodriguez v. Industrial Comm'n, 447 N.E.2d 186 (1982); see also Juarez, 957 F.2d at 323 n.4 (7th Cir. 1992) (quoting, Collier v. Wagner Castings Co., 408 N.E.2d 198, 202 (Ill. 1980) (barring IIED claim against employer because sexually-harassing employee is risk inherent in the workplace)).

Finally, plaintiff cannot dispute that her alleged injuries are not compensable under the IWCA. Claims involving emotional distress arising from a variety of intentional tort claims have been found to be compensable under the IWCA. See Juarez, 957 F.2d at 323-24; Collier, 408 N.E.2d at 202; Richardson, 621 N.E.2d at118; Jablonski v. Mutlack, 380 N.E.2d 924 (1st Dist. 1978)(noting that an employee's unjustifiable assault by co-worker during course of employment was compensable as accident injuries under the IWCA).

Accordingly, the IWCA bars plaintiff's IIED claim against the City; therefore this claim should be dismissed with prejudice pursuant to Rule 12(b)(1).

### C.    Plaintiff Fails To State A Claim For Intentional Infliction Of Emotional Distress Under Illinois Law

Even if this Court had subject matter jurisdiction over plaintiff's IIED claim, the Court should still dismiss the claim pursuant to Rule 12(b)(6) because plaintiff failed to state a claim upon which relief can be granted. To state a claim for IIED, a plaintiff must allege that (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew there was a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. Doe v. Calumet City, 641 N.E.2d 498, 506 (1994). For purposes of determining whether a complaint sufficiently alleges a cause of action for IIED, a mere statement that an act was done with purpose or intent, without facts showing such purpose or intent, is a conclusion of law and insufficient. Tobolt v. Allstate Ins. Co., 393 N.E.2d 1171,1175 (1st Dist. 1979). Further, conduct is extreme and outrageous only if "'the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.'" Public Finance Corp. v. Davis, 360 N.E.2d 765, 767 (1976) (quoting Restatement (Second) of Torts, § 46, cmt. d (1965)). Conduct is considered extreme and outrageous where "recitation of the facts

to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" Doe, at 392 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

In the employment context, to state a claim for IIED, a plaintiff must show extreme and outrageous behavior on the part of the employer. Honaker v. Smith, 256 F.3d 477, 491 (7th Cir. 2001). "Mere insults, indignities, threats, annoyances, petty oppressions or trivialities" will not suffice. Cook v. Winfrey, 141 F.3d 322, 331 (7th Cir. 1998). A court must find the actions of an employer to be "far more severe than the typical disagreements or job related stress caused by the average work environment" before those actions will constitute extreme or outrageous conduct. Honaker, 256 F.3d at 491. Viewing plaintiff's allegations in the light most favorable to her and accepting her allegations as true, she still fails to allege that the City's conduct was "so extreme in degree, as to go beyond all bounds of decency."

Plaintiff alleges that the City's conduct was "extreme, outrageous, and beyond the bounds of moral decency." (Cmplt., at ¶ 69) However, plaintiff does not state any facts that would support her conclusory allegation that the City's conduct was extreme and outrageous. Although a complaint need not contain detailed factual allegations under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff is nonetheless obligated to provide the grounds of her entitlement to relief, which "requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S. Ct at 1964-65. Plaintiff's IIED claim must therefore be dismissed for failure to state a claim.

Plaintiff also fails to state a claim for IIED because she does not allege that the City's actions in fact caused her severe emotional distress. McGrath v.Fahey, 533 N.E.2d 806, 809 (1988). "Although fright, horror, grief, shame, humiliation, worry, etc., might fall within the gambit of the term 'emotional distress,' these mental conditions alone are not actionable." Plaintiff's distress should only be considered severe if "no reasonable person could be expected to endure it." Id. at 809.

Plaintiff's allegations fall far short of this standard. Instead, her complaint summarily concludes that, "[plaintiff] suffered severe emotional distress, mental anguish, anxiety, humiliation, depression and physical damage." (Complt. at ¶ 71) Again, plaintiff has not met

her obligation to provide the grounds of her entitlement to relief under Rule 8(a).  Bell Atlantic Corp., 127 S. Ct at 1964-65.  Plaintiff's generic allegation of anxiety and distress, alone, is insufficient to support an inference that plaintiff's emotional reaction reached the level of severity required under Illinois law.  See Ostendorf, 1994 WL 741425, at *4 (holding that, while the complaint alleged that plaintiff suffered a physical reaction, physical and emotional pain, anguish, and distress, it was insufficient and was, consequently, dismissed since it gave no support for an inference that plaintiff's distress was sufficiently severe).  Because plaintiff fails to allege that the City engaged in extreme and outrageous conduct and that plaintiff did, in fact, suffer profound emotional distress as a result, Count V is legally deficient and must be dismissed.

## V.    THE TIME TO ANSWER ALL CLAIMS SHOULD BE STAYED PENDING RULING ON THE MOTION TO DISMISS

Where a motion requests that a court dismiss only part of a complaint, the time to answer all claims, including those that are not subject to the motion, is extended.  Oil Express National, Inc. v. D'Alessandro, 173 F.R.D. 219, 220-21 (N.D. Ill. 1997).  This promotes efficiency and avoids confusion.  Id. at 221.  Accordingly, the City respectfully requests that the time to answer all claims in the present action should be stayed pending a ruling on the motion to dismiss.

**CONCLUSION**

**WHEREFORE**, for the foregoing reasons defendant City of Chicago respectfully requests that this Court grant its Motion to Dismiss Plaintiff Linda Brumfield's Complaint in part and stay the time to answer the remaining claims pending the ruling on this motion.


**DATED**: July 9, 2008                                    Respectfully submitted,

                                                           MARA S. GEORGES
                                                           Corporation Counsel of the
                                                           City of Chicago

30 North LaSalle Street, Suite 1020        By:    /s/ *Robert C. Rutherford, Jr.*
Chicago, Illinois 60602                            ROBERT C. RUTHERFORD, Jr.
(312) 742-7036/ 744-9332                           MARCELA D. SÁNCHEZ
                                                   Assistants Corporation Counsel

15

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LINDA J. BRUMFIELD                )
                                  )
            Plaintiff,            )        No. 08 C 2024
        v.                        )
                                  )        Judge Leinenweber
CITY OF CHICAGO,                  )
                                  )        Magistrate Judge Cox
            Defendants.           )
                                  )

## APPENDIX OF EXHIBITS

A.    EEOC Charge Nos. 440-2007-01346, 440-2007-04915 and 440-2008-01244

B.    Unpublished Westlaw cases

      - <u>Perkins v. University of Illinois at Chicago</u>, No. 95 C 4320, 1995 WL 680758
       (N.D. Ill. Nov. 14, 1995)

      - <u>Ostendorf v. Elkay Mfg. Co.</u>, No. 94 C 50170, 1994 WL 741425 (N.D. Ill. Dec.
       29, 1994)

      - <u>Robinson v. Roney Oatman, Inc.</u>, No. 97 C 8964, 1999 WL 1102694 (N.D. Ill.
       Nov. 23, 1999)

C.    Plaintiff's Right-to-Sue Letters

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 440-2007-01346 |

| Illinois Department Of Human Rights | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Linda J. Brumfield** | **(773) 415-2794** | **05-03-1963** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1906 W. Montrose, #2, Chicago, IL 60613** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **CHICAGO POLICE** | **500 or More** | **(312) 745-6262** |

| Street Address | City, State and ZIP Code |
|---|---|
| **3510 S Michigan Ave, Chicago, IL 60652** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **10-01-2003** | **11-27-2006** |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent on October 25, 1999. My most recent position is Police Officer. Since in or around October 2003, I have been subjected to harassment in the form of excessive discipline and derogatory remarks about my attire. Most recently, I was subjected to an unnecessary medical and psychological exam in June 2006. Since then, I was disciplined on August 24, 2006, October 30, 2006, and November 26, 2006.

I believe that I have been discriminated against because of my race, Black, and sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

NOV 27 2006

CHICAGO DISTRICT OFC

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Nov 27, 2006** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date | *Charging Party Signature* | |

EXHIBIT

A

tabbies®

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 440-2007-04915 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Linda J. Brumfield** | **(773) 415-2794** | **05-03-1963** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1401 West Irving Park Road, #2R, Chicago, IL 60613** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **CHICAGO POLICE DEPARTMENT** | **500 or More** | **(312) 745-6262** |

| Street Address | City, State and ZIP Code |
|---|---|
| **3510 S Michigan Ave, Chicago, IL 60652** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| **01-16-2007** | **05-10-2007** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by the Respondent on October 25, 1999. I am employed as a Police Officer. On November 27, 2006, I filed a charge of discrimination (EEOC charge number: 440-2007-01346) against the Respondent. On or about January 16, 2007, I requested a transfer from the 1st shift to the 3rd shift. I did not receive the transfer until I bid for it. On February 9, 2007, Respondent initiated a Complaint Register against me. On February 21, 2007, Respondent required that I submit to a psychological evaluation. On February 23, 2007, Respondent required that I submit to a medical examination. On April 30, 2007, I was forced to drive Respondent's unsafe vehicle and was injured while doing so. On April 30, 2007, Respondent initiated another Complaint Register against me. On May 10, 2007, Respondent ordered me to submit to a mandatory fitness for duty exam and a psychological exam on May 21, 2007.

I believe that I have been subjected to retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

MAY 2 1 2007

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| *X [signature]*     *X [signature]* <br> Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 440-2008-01244 |

**Illinois Department Of Human Rights** and EEOC

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Linda J. Brumfield | (773) 415-2794 | 05-03-1963 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1401 West Irving Park Road, #2r, Chicago, IL 60613 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| CHICAGO POLICE DEPARTMENT | 500 or More | (312) 745-6262 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3510 S Michigan Ave, Chicago, IL 60652 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON (Check appropriate box(es).)**

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.)

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest: **01-01-2007**   Latest: **11-05-2007**

☒ CONTINUING ACTION

**THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):**

I was hired by the Respondent on October 25, 1999. I am employed as a Police Officer. During my employment, I engaged in protected activity. Subsequently, I have been subjected to unwarranted disciplinary actions; placed on mandatory medical, stationary status and subjected to psychological exams; stripped of police powers and removed from the department bidding process.

I believe that I have been retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

DEC 1 1 2007

CHICAGO DISTRICT OFC

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Date: 11 Dec 07        Charging Party Signature

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 680758 (N.D.Ill.), 13 A.D.D. 986
(Cite as: Not Reported in F.Supp., 1995 WL 680758 (N.D.Ill.))

**H**Perkins v. University of Illinois at Chicago
N.D.Ill.,1995.

United States District Court, N.D. Illinois, Eastern
Division.
Thomas E. PERKINS, Plaintiff,
v.
UNIVERSITY OF ILLINOIS AT CHICAGO,
Defendant.
**No. 95 C 4320.**

Nov. 14, 1995.

MEMORANDUM AND ORDER

LINDBERG, District Judge.
*1 Plaintiff, Thomas E. Perkins, has filed a complaint
alleging that defendant, the University of Illinois,
committed acts of race discrimination (Count I), disability
discrimination (Count II), and retaliation for filing a
charge of discrimination (Count III). Defendant has filed
a motion to dismiss Counts I and II pursuant to FRCP
12(b)(6), a memorandum in support of that motion, and an
answer to Count III.

It is initially noted that defendant has proceeded in
violation of both this court's rules and FRCP 12. The more
serious of the violations, the violation of Federal Rule of
Civil Procedure 12, will be discussed first.

The Federal Rules of Civil Procedure contemplate the
filing of a single answer, not separate answers to separate
counts of the complaint. For example, in Rule 7 it is stated

that:

There shall be a complaint and *an answer;* a reply to a
counterclaim denominated as such; an answer to a
cross-claim, if *the answer* contains a cross-claim; a
third-party complaint, if a person who was not an original
party is summoned under the provisions of Rule 14; and a
third-party answer, if a third-party complaint is served. *No
other pleading shall be allowed,* except that the court may
order a reply to an answer or a third-party answer.

FRCP 7(a) (emphasis added). Rule 12 provides in part:
Unless a different time is prescribed by a statute of the
United States, a defendant shall serve *an answer*

(A) within 20 days after being served with the summons
and complaint[.]

FRCP 12(a)(1)(A) (emphasis added). In addition:
Unless a different time is fixed by court order, the service
of a motion permitted under this rule alters these periods
of time as follows:

(A) if the court denies the motion or postpones its
disposition until the trial on the merits, *the responsive
pleading* shall be served within 10 days after notice of the
court's action[.]

FRCP 12(a)(4)(A) (emphasis added).

Rule 12(b) provides:

Every defense, in law or fact, to a claim for relief in any

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT
B
tabbies®

Not Reported in F.Supp.                                                                                          Page 2
Not Reported in F.Supp., 1995 WL 680758 (N.D.Ill.), 13 A.D.D. 986
(Cite as: Not Reported in F.Supp., 1995 WL 680758 (N.D.Ill.))

pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted....

FRCP 12(b). Consistent with the requirement of a single answer, Rule 12(b) also states that:
A motion making any of these defenses shall be made before pleading if a further pleading is permitted.

FRCP 12(b). By filing a motion to dismiss Counts I and II pursuant to Rule 12(b)(6) simultaneously an answer to Count III, defendant violated the requirement that a defendant file a single answer to a complaint and the requirement that a motion to dismiss pursuant to Rule 12 be made before (not after or even at the same time as) pleading. FRCP 12(b).

Defendant's violation of FRCP 12 presents the court with a choice of at least three courses of action. First, the court could consider the answer filed and the motion to dismiss untimely. The court would then likely construe the untimely motion to dismiss to be a motion for judgment on the pleadings, and so consider the issues it raises. See FRCP 12(c), (h)(2). This course, nonetheless, would be highly unsatisfactory. The answer's failure to deny the allegations contained in Counts I and II would admit those allegations, FRCP 8(d), which was certainly not defendant's intent, as evidenced by the filing of the motion to dismiss those counts. Second, the court could strike both the answer and the motion to dismiss, allowing defendant to determine which way it wishes to proceed. While this course would allow defendant to take the action it intended, it would be wasteful of the time of both the court and counsel. It is unnecessary as well, since the documents filed seem to the court to evince an intent on the part of defendant to move to dismiss Counts I and II. Third, the court therefore will follow the course of striking the answer and treating the motion to dismiss as properly

before the court.

*2 Defendant has also violated this court's rules. Both the Federal Rules of Civil Procedure and this court's rules require that a motion state with particularity its grounds and the relief requested. FRCP 7(b)(1); USDistCt, NDIll, GR 12(C). Compliance with this requirement permits the court to rule on many motions without the need for briefing. In some instances the court may wish to have further argument on the issues raised in a motion, so the court has the authority to order briefing of a motion. USDistCt, NDIll, GR 12(O). However, briefing is, in most instances, discretionary with the court. Compare USDistCt, NDIll, GR 12(O) with GR 12(M) and 12(N). Defendant has violated this court's rules by filing a memorandum with its motion to dismiss when the court has not set a briefing schedule. USDistCt, NDIll, GR 12(O). The motion to dismiss, although not quite so conclusory as many motions this court sees, also appears to violate General Rule 12(C) and Federal Rule of Civil Procedure 7(b)(1) in that it does not state its grounds with particularity.

The court could decline to set a briefing schedule, strike defendant's memorandum as filed without authorization, and deny defendant's motion to dismiss for lack of particularity. However, this would only result in wasted effort, as defendant could then answer and raise the question of whether Counts I and II state claims upon which relief can be granted in a motion for judgment on the pleadings. See FRCP 12(c), (h)(2). The court will therefore grant defendant leave to file its memorandum in support of the motion to dismiss Counts I and II and consider the memorandum along with the motion. It will not be necessary to set a briefing schedule.

Defendant's motion to dismiss is dependent upon two exhibits attached to the memorandum in support of the motion to dismiss; as defendant describes them:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 680758 (N.D.Ill.), 13 A.D.D. 986
(Cite as: Not Reported in F.Supp., 1995 WL 680758 (N.D.Ill.))

Attached hereto as Exhibit A are the EEOC charge of September 20, 1994 (number 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), alleging race discrimination, and corresponding notice of right to sue-with a finding of no reasonable cause. Attached hereto as Exhibit B are the EEOC charge of April 13, 1995 (number 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), alleging retaliation, and the corresponding EEOC materials concerning Perkins' request for a notice of right to sue on said retaliation charge.

Rule 12(b) provides:
If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FRCP 12(b). The Seventh Circuit has said that:
Rule 12(b) is mandatory; consequently, if documents outside of the pleadings are placed before a district court, and not excluded, the court must convert the defendant's 12(b)(6) motion to one for summary judgment and afford the plaintiff an opportunity to submit additional evidentiary material of his or her own....

**\*3** On the other hand, Federal Rule of Civil Procedure 10(c), which provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," is permissive in nature. A plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but a defendant may introduce certain pertinent documents if the plaintiff failed to do so.... Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim....

Venture Associates Corporation v Zenith Data Systems Corporation, 987 F2d 429, 431 (7th Cir1993). See also Wright v Associated Insurance Companies Incorporated, 29 F3d 1244, 1248 (7th Cir1994). Several decisions by judges of this court have held that EEOC charges are documents that, if not attached to the complaint, are central to plaintiff's claim and so can be considered if referred to in the complaint and attached to defendant's motion to dismiss. See Greene v. Term City, Inc., 828 FSupp 584, 586 n 1 (NDIll1993); Knight v Entertainment Publications, Inc., 1995 WL 583916, \*3 n 1 (NDIll); Redding v. Freeman Products, Inc., 1995 WL 410922, \*2 (NDIll); Kevwitch v. Sea-Land Service, Inc., 1994 WL 159358, \*2 n 1 (NDIll); Lynch v. City of Chicago, 1993 WL 387369, \*4 n 1 (NDIll).

Having permitted defendant to file its memorandum, the court believes that the fact that the copies of the EEOC charges are attached to the memorandum and not the motion to dismiss is of no moment. Also, the court has no hesitation in concluding, with the other district judges who have addressed the issue, that the EEOC charges are central to plaintiff's claims.

The complaint includes the following paragraph:

4. On September 20, 1994 and April 13, 1995, the Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. On or about May 25, 1995, the Plaintiff received a "notice of right to sue" which indicated that he had ninety (90) days in which to file a complaint in Federal District Court.

This paragraph is highly deceptive. The documents attached to defendant's memorandum make clear that there were two charges of discrimination-one on September 20, 1994, and the other on April 13, 1995-which were disposed of at two different times-the first in a decision of the EEOC dated April 14, 1995, and the second in a notice

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4
Not Reported in F.Supp., 1995 WL 680758 (N.D.Ill.), 13 A.D.D. 986
(Cite as: Not Reported in F.Supp., 1995 WL 680758 (N.D.Ill.))

of right to sue letter by the Justice Department dated May 12, 1995. As defendant correctly notes, plaintiff's July 26, 1995, complaint in this action was timely filed with respect to the April 13, 1995, EEOC charge but untimely filed with respect to the September 20, 1994, EEOC charge. The claim of race discrimination made in Count I was contained only in the September 20, 1994, EEOC charge, and is therefore time barred. 42 USC § 2000e-5(f). Count I will therefore be dismissed.

**\*4** As to Count II's disability discrimination claim, defendant argues:

A Title VII or ADA plaintiff may not include claims in a complaint that are not encompassed in the predicate EEOC charge. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir.1992). A claim is considered to be within the scope of the EEOC charge only if it is "like or reasonably related to the allegations of the [EEOC] charge and grow[s] out of such allegations." *Jenkins v. Blue Cross Mutual Hosp. Ins. Inc.*, 538 F.2d 164, 167 (7th Cir.) (*en banc* ), *cert. denied,*429 U.S. 986 (1976). Here, Perkins' claim of disability discrimination must be dismissed because it is not "like or related to" the race and retaliation claims he raised in his EEOC charges.

Although on the April 13, 1995, EEOC charge the cause of discrimination section has the box labelled "retaliation" marked and not the box labelled "disability," in the section for particulars plaintiff included the following:
I. .... My doctor's medical restrictions were not honored. On March 23, 1995, I was sent home by my supervisor and have not been allowed to return to work.

II. Respondent told me that the work assignments given are a form of light duty accommodation. Respondent told me that I was sent home because they could not accommodate the five pounds medical restrictions.

III. I believe I have been retaliated against for filing charge number 210945147 with the EEOC, in violation of Title VII of the Civil Rights Act of 1964, Section 704(a) as amended, in that:

....

B. I was not allowed to return to work after I was treated at the Respondent's Health Unit, in spite of the fact medical unit doctor indicated that I could return to work.

Count II of the complaint includes the following allegations:
8. Between October 3, 1994 and February 1995, the Plaintiff was seen a number of times by the Defendant's doctor and given limitations on the duties he could perform because of his disability. The Defendant refused to honor those restrictions and assigned him to perform work which aggravated his disability instead of accommodating his disability. On March 23, 1995, the Plaintiff was sent home and has not been allowed to return to work.

9. The Plaintiff was denied a reasonable accommodation and sent home without being allowed to return because of his disability (tendinitis) in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et. seq.

Although the April 13, 1995, EEOC charge was stated in terms of retaliation, the particulars stated in that charge are such that the disability claim made by plaintiff in Count II is like or reasonably related to the April 13, 1995, EEOC charge and so the disability claim made in Count II is within the scope of that charge. Count II will therefore not be dismissed.

Rule 11 of the Federal Rules of Civil Procedure provides:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 5
Not Reported in F.Supp., 1995 WL 680758 (N.D.Ill.), 13 A.D.D. 986
(Cite as: Not Reported in F.Supp., 1995 WL 680758 (N.D.Ill.))

(b) Representations to Court. By presenting to the court ... a pleading ... an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-

**\*5** ....

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

....

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) *How Initiated.*

....

(B) *On Court's Initiative.* On its own initiative, the court may enter an order describing the specific conduct that

appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

FRCP 11. The filing of the complaint including Count I appears to violate FRCP 11(b), in that the claim in Count I was time barred and not "warranted by existing law or by a nonfrivolous for the extension, modification, or reversal of existing law or the establishment of new law." FRCP 11(b)(2). In addition, the filing of the complaint including the deceptive wording of paragraph 4, indicating that a single EEOC charge was filed and that the proceedings before the EEOC on this single charge were terminated by the May notice of right to sue letter appears to violate FRCP 11(b), in that paragraph 4 contains "factual contentions" that do not "have evidentiary support" and was not specifically identified as being "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." FRCP 11(b)(3). Plaintiff's attorney, Gerald A. Goldman, will therefore be required to show cause why he has not violated FRCP 11(b).

ORDERED: Defendant the University of Illinois's answer to Count III is stricken.

Defendant is granted leave to file its memorandum in support of its motion to dismiss Counts I and II of the complaint.

Defendant's motion to dismiss Counts I and II of the complaint is granted as to Count I of the complaint and denied as to Count II of the complaint.

The court, *sua sponte,* orders plaintiff's attorney, Gerald A. Goldman, to appear before the court on November 16, 1995, at 9:30 a.m., to show cause why he has not violated FRCP 11(b) by filing a complaint that (1) includes Count

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 6
Not Reported in F.Supp., 1995 WL 680758 (N.D.Ill.), 13 A.D.D. 986
(Cite as: Not Reported in F.Supp., 1995 WL 680758 (N.D.Ill.))


I which makes a claim violative of <u>FRCP 11(b)(2) and (2)</u>
includes paragraph 4 that makes factual assertions
violative of <u>FRCP 11(b)(3)</u> as more fully explained in this
Memorandum and Order.


N.D.Ill.,1995.
Perkins v. University of Illinois at Chicago
Not Reported in F.Supp., 1995 WL 680758 (N.D.Ill.), 13
A.D.D. 986


END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.), 6 NDLR P 68
(Cite as: Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.))

Page 1

**C**Ostendorf v. Elkay Mfg. Co.
N.D.Ill.,1994.

United States District Court, N.D. Illinois, Western
Division.
James R. OSTENDORF, Plaintiff,
v.
ELKAY MANUFACTURING COMPANY, an Illinois
corporation, and Phyllis Roth, Defendants.
**No. 94 C 50170.**

Dec. 29, 1994.

Michael J. Phillips, Rockford, IL, for plaintiff.
Arthur B. Smith, Jr., Tracey L. Truesdale, Murphy, Smith
& Polk, Chicago, IL, for defendants.

*MEMORANDUM OPINION AND ORDER*

REINHARD, District Judge.

### INTRODUCTION

**\*1** Plaintiff James R. Ostendorf brought this two-count
complaint against defendants Elkay Manufacturing
Company ("Elkay") and Phyllis Roth, Elkay's personnel
manager. In Count I, Ostendorf alleges Elkay and Roth
violated his rights under the Americans with Disabilities
Act ("ADA"), 42 U.S.C. § 12101*et seq.* In Count II,
Ostendorf alleges the same actions constituted the Illinois
common law tort of intentional infliction of emotional
distress. Jurisdiction over Count I is premised upon 28

U.S.C. §§ 1331 and 1343. Jurisdiction over Count II is
premised upon 28 U.S.C. § 1367. Venue is proper under
28 U.S.C. § 1391(b)(2), as a substantial part of the events
or omissions giving rise to the claim occurred in this
judicial district. Defendants have moved to dismiss Count
I as to Roth and Count II in its entirety under Fed.R.Civ.P.
12(b)(6).

### BACKGROUND

The following facts are derived from the allegations of the
complaint, which the court must take as true for purposes
of the present motion. Ostendorf was employed by Elkay
from May of 1990 until September 7, 1993 as an
assembler and as a sheet metal operator. Roth was the
employee at Elkay responsible for personnel decisions
involving Ostendorf.

Ostendorf is disabled in that he suffers from incurable
diabetes, which substantially limits his life activities. With
the exception of that disability, Ostendorf was capable of
performing all of the essential functions of assembler and
sheet metal operator, as the positions are defined by Elkay.
Elkay and Roth, however, refused to provide Ostendorf
with appropriate and sanitary conditions and time periods
for self-administration of the treatment required by his
diabetes; assigned different, oppressive, and more
burdensome duties to Ostendorf because of his disability;
retaliated against Ostendorf for exercising his rights under
the ADA; and terminated Ostendorf without discussing
with him or offering to make a reasonable accommodation
which would enable him to perform the essential functions
of his position. These actions were willfully and wantonly
undertaken. As a result of these actions, Ostendorf
suffered a physical reaction, as well as physical and
emotional pain, anguish, and distress.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 2
Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.), 6 NDLR P 68
(Cite as: Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.))

## CONTENTIONS

Defendants contend that Count II of the complaint fails to state a claim for intentional infliction of emotional distress in that it does not allege extreme and outrageous conduct, does not allege severe emotional distress, and does not allege that Elkay and Roth knew that their conduct would, or was substantially likely to, cause severe emotional distress. Defendants also contend that intentional infliction of emotional distress is barred by the exclusive remedy provisions of the Illinois Workers' Compensation Act ("IWCA"), as the discrimination faced by Ostendorf was a risk inherent in employment and peculiar to the workplace. Finally, as to Count I defendants contend that employees such as Roth are not subject to individual liability under the ADA.

**\*2** Ostendorf contends that because the ADA is a remedial statute which must be broadly construed, it should be interpreted to subject supervisory employees to liability for actions violating its provisions. Ostendorf also contends that the IWCA only bars an intentional infliction of emotional distress claim where an employee has sought or received compensation under the IWCA. Finally, Ostendorf requests that if the complaint is defective, he should be granted leave to amend it.

## DISCUSSION

In evaluating a motion to dismiss, the court must accept as true all well-pled factual allegations and draw all reasonable inferences in favor of the plaintiff. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Mid Am. Title Co. v. Kirk,* 991 F.2d 417, 419 (7th Cir.)*cert. denied,*114 S.Ct. 346 (1993). Dismissal is appropriate only if it appears beyond doubt that a plaintiff can prove no set of facts consistent with the complaint that would entitle it to the relief it seeks. *McLain v. Real Estate Bd. of New Orleans, Inc.,* 444 U.S. 232, 246 (1980) (quoting *Conley*

*v. Gibson,* 355 U.S. 41, 45-46 (1957)).

*I. Intentional Infliction of Emotional Distress*

*a. Illinois Workers' Compensation Act Bar*

Defendants contend Ostendorf's intentional infliction of emotional distress claim is barred by the Illinois Workers' Compensation Act, 820 ILCS 305/1 *et seq.* (1994). An employee suit against an employer will escape the exclusive remedy provisions of the IWCA, 820 ILCS 305/5(a) & 305/11,[FN1] where the injury either: 1) was not accidental, 2) did not arise from employment, 3) was not received during the course of employment, or 4) was noncompensable under the IWCA. *Collier v. Wagner Castings Co.,* 81 Ill.2d 229, 408 N.E.2d 198, 202 (1980). Emotional distress is a compensable injury under the IWCA, *see id.,* and Ostendorf's injury clearly was received during the course of employment.

In addition, intentional infliction of emotional distress by a fellow employee based upon discriminatory animus, and not some more personal motive, arises out of employment. *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 323-24 (7th Cir.1992). In *Juarez,* the Seventh Circuit looked to the Illinois Supreme Court's reasoning in *Rodriguez v. Industrial Comm'n,* 95 Ill.2d 166, 447 N.E.2d 186, 188-90 (1983), which stated that an assault by one employee upon another based on the latter's ethnic heritage was "the result of an irrational human impulse toward violence which is as much a part of the victim's work environment as a defective tool would be." Such a racially or ethnically motivated assault was "a hazard presented by work" and "a risk inherent in employment," which, therefore, arose from employment. *Rodriguez,* 447 N.E.2d at 190. Based upon this reasoning, the *Juarez* court held that an intentional infliction of emotional distress claim based upon allegations of sexual harassment and of retaliation for filing a sexual harassment complaint, arose

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                 Page 3
Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.), 6 NDLR P 68
(Cite as: Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.))

out of employment and was barred by the IWCA. 957 F.2d at 323-24. The same reasoning applies in the present case. The actions forming the basis of Ostendorf's complaint allegedly arose out of discriminatory animus, not some more personal motive, and the hazard of these actions occurring was presented by work. In other words, being discriminated against based upon a disability, as Ostendorf claims he was, is "a risk inherent in employment."

**\*3** As a result, the only remaining escape from the IWCA's exclusive remedy provisions would be that the injury was "not accidental." The fact that the cause-of-action asserted by Ostendorf is denominated "intentional infliction of emotional distress" does not end the inquiry, at least as far as Elkay is concerned, for intentionally tortious actions by a co-employee of the victim are deemed "accidental" in regard to the employer in certain circumstances. _See Meerbrey v. Marshall Field & Co., Inc.,_ 139 Ill.2d 455, 564 N.E.2d 1222, 1226 (1990). While a co-employee cannot escape liability for intentional actions based upon the IWCA exclusive remedy provisions (unless a plaintiff has already collected compensation from the employer under the IWCA, _see Collier,_ 408 N.E.2d at 203-04, a fact not alleged here), _id.,_ 564 N.E.2d at 1230; _Fitzgerald v. Pratt,_ 223 Ill.App.3d 785, 585 N.E.2d 1222, 1225 (5th Dist.1992), the co-employee's actions are accidental with regard to the employer and thus barred under the IWCA unless they were commanded or expressly authorized by the employer or unless the employer or the employer's alter ego intentionally committed the tort, _Meerbrey,_ 564 N.E.2d at 1226; _Fitzgerald,_ 585 N.E.2d at 1225; _Pommier v. James L. Edelstein Enter.,_ 816 F.Supp. 476, 482 (N.D.Ill.1993); _Jaskowski v. Rodman & Renshaw, Inc.,_ 813 F.Supp. 1359, 1363 (N.D.Ill.1993).

Ostendorf alleges that Roth was the employee at Elkay responsible for personnel decisions involving Ostendorf and that the conduct complained of was done willfully and wantonly. Such allegations are sufficient to escape the bar with regard to Roth and might be enough to escape the IWCA bar in regard to Elkay if they were not lacking in

one crucial respect. None of the allegations in the complaint supports an inference that Elkay acted with the specific intent to injure Ostendorf. _See Bercaw v. Domino's Pizza, Inc.,_ 258 Ill.App.3d 211, 630 N.E.2d 166, 168-70 (2d Dist.1994); _Copass v. Illinois Power Co.,_ 211 App.3d 205, 569 N.E.2d 1211, 1215-16 (4th Dist.1991); _Ryherd v. Growmark, Inc.,_ 156 Ill.App.3d 667, 509 N.E.2d 113, 116 (4th Dist.1987). Requiring specific intent to escape the IWCA bar in regard to the employer is important both to ensure that the injury was, in fact, accidental in character, _Copass,_ 569 N.E.2d at 1216 (citing 2A A. Larson, Workman's Compensation Law § 65.11, at 13-36 through 13-44 (1990)), and to serve the IWCA's purpose of "providing a broad scheme of recompense for on-the-job injuries," _Bercaw,_ 630 N.E.2d at 169. Thus, because the complaint does not contain allegations to support an inference that Elkay intended to cause Ostendorf severe emotional distress, Ostendorf's intentional infliction of emotional distress claim is barred by the exclusive remedy provisions of the IWCA, and Count II is dismissed with regard to Elkay.

_b. Stating a Claim_

Even if Ostendorf's intentional infliction of emotional distress claim were not barred in regard to Elkay by the IWCA, it would have to be dismissed in regard to both defendants for failure to state a claim. In Illinois, the tort of intentional infliction of emotional distress consists of three elements. _McGrath v. Fahey,_ 126 Ill.2d 78, 533 N.E.2d 806, 809 (1989). First, the conduct causing it must be "truly extreme and outrageous." _Id._ Second, that conduct must either be intended to inflict severe emotional distress or be done knowing there is a high probability it will result in severe emotional distress. _Id._ Third, severe emotional distress must actually result. _Id._ As currently pled, Count II does not support the first and third elements of the tort.[FN2]

**\*4** To constitute truly extreme and outrageous conduct, a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 4
Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.), 6 NDLR P 68
(Cite as: Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.))

defendant's actions must go beyond "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Id.* (quoting Restatement (Second) of Torts § 46, comment d, at 73 (1965)); *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 360 N.E.2d 765, 767 (1976) (same). Conduct which is only "inconsiderate, rude, vulgar, uncooperative, unprofessional and unfair" does not constitute intentional infliction of emotional distress. *Pommier,* 816 F.Supp. at 482-83 (quoting *Miller v. Equitable Life Assur. Soc'y,* 181 Ill.App.3d 954, 537 N.E.2d 887, 889 (1st Dist.1989)). The circumstances of a typical employment dispute, even a discrimination claim, generally do not rise to the level of extreme and outrageous conduct supporting an intentional infliction of emotional distress claim. *Piech v. Arthur Anderson & Co.,* 841 F.Supp. 825, 831 (N.D.Ill.1994) ("A claim for intentional infliction of emotional distress, however, requires more than what is required for sexual harassment."); *see Harriston v. Chicago Tribune,* 992 F.2d 697 (7th Cir.1993) (African-American employee's allegations that she was not allowed to supervise white employees, reprimanded for no reason, denied participation in certain benefits, forced out of management, falsely accused of poor performance, threatened with discipline, and excluded from social activities was not extreme and outrageous conduct under Illinois law).

In the present case, none of defendants' alleged discriminatory actions under Count I (denying Ostendorf the time and a location to self-administer his treatment; assigning greater duties to him based upon his diabetes; retaliating against him for exercising his rights under the ADA; terminating him without attempting to reach a reasonable accommodation) can be characterized as "truly extreme and outrageous," *McGrath,* 533 N.E.2d at 809, or "beyond all possible bounds of decency," *Jaskowski,* 813 F.Supp. at 1363 (employer's discriminatory conduct not intentional infliction of emotional distress); *see also Love v. TPI Restaurants, Inc.* No. 91-2184-17, 1992 WL 402923, 1992 U.S.Dist. LEXIS 20699 (D.S.C. April 7, 1992) (employer's failure to provide time for employee

with diabetes to self-administer medication not grounds for intentional infliction of emotional distress under South Carolina law); *but see Pommier,* 816 F.Supp. at 482-83 (discriminatory acts and deliberate attempts to retaliate for filing discrimination complaint may rise to the level of extreme and outrageous conduct under *McGrath* ), and Ostendorf alleges nothing in support of his intentional infliction of emotional distress claim that he does not plead in support of his ADA claim, since Count II simply incorporates by reference the facts pled in Count I.

Further, the emotional distress resulting from the extreme and outrageous conduct must be severe. *See McGrath,* 533 N.E.2d at 809. Mental conditions such as "fright, horror, grief, shame, humiliation, worry" and the like do not reflect emotional distress severe enough to be actionable. *Public Finance,* 360 N.E.2d at 767. Only distress "so severe that no reasonable man could be expected to endure it" supports the tort. *Id.* While the complaint alleges that Ostendorf suffered a physical reaction and physical and emotional pain, anguish, and distress, it gives no support for the inference that the reaction reached the severity needed to support the tort under Illinois law. As a consequence, Count II is dismissed in regard to both defendants.

*II. Americans with Disabilities Act: Supervisor Liability*

**\*5** Count I, Ostendorf's ADA claim, has been brought against both Elkay and Roth. The ADA prohibits any "covered entity" from discriminating on the basis of an individual's disability. *See* 42 U.S.C. § 12112(a). "Covered entity" is defined by the ADA to include an "employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). "Employer" is, in turn, defined to mean "a person engaged in industry affecting commerce who has 15 or more employees for each working day in each of the 20 or more calendar weeks in the current or preceding calendar year, and *any agent of* such person." 42 U.S.C. § 12111(5)(A)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 5
Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.), 6 NDLR P 68
(Cite as: Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.))

(emphasis added). This structure, especially the definition of employer, parallels that found in other federal employment discrimination statutes such as Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. (1994), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. (1994). Title VII prohibits an employer from discriminating on any of several bases, 42 U.S.C. § 2000e-2(a), and defines employer to include "any agent of" an employer, 42 U.S.C. § 2000e(b). The ADEA prohibits an employer from discriminating on the basis of a person's age, 29 U.S.C. § 623, and also defines employer to include "any agent of" an employer, 29 U.S.C. § 630(b)(1). As a result of this language, the issue has arisen of whether a co-employee of a discrimination plaintiff, such as Roth in the present case, may be liable under these statutes for discriminatory actions if the co-employee qualifies as an agent of the employer. Defendants contend no such co-employee liability exists under the ADA.

Although the Seventh Circuit has touched tangentially upon the issue, see Price v. Marshall Erdman & Assoc., 966 F.2d 320, 324 (7th Cir.1992) (affirming, in part, jury verdict against supervisor in ADEA case); Shager v. Upjohn Co., 913 F.2d 398, 404-05 (7th Cir.1990) (dicta in ADEA case discussing co-employee liability); Gaddy v. Abex Corp., 884 F.2d 312, 316-20 (7th Cir.1989) (affirming, in part, jury verdict against-but no relief from-supervisor in Title VII case); EEOC v. Vucitech, 842 F.2d 936, 938-44 (7th Cir.1988) (affirming Title VII claim against corporate officers); Riordan v. Kempiners, 831 F.2d 690, 694-95 (7th Cir.1987) (permitting Equal Pay Act, 29 U.S.C. § 206(d)(1), claim against supervisor, but only in official capacity); Huebschen v. Department of Health and Social Serv., 716 F.2d 1167, 1170-71 (7th Cir.1983) (noting that both parties agreed that supervisor was not "employer" under Title VII), it has not yet directly addressed the issue under any of the federal employment discrimination statutes. The district courts of the Northern District of Illinois are divided on this issue, and the rationales supporting the positions on the issue have evolved.

The initial rationale for denying co-employee liability was founded upon the limited remedies available under Title VII. See Pommier, 816 F.Supp. at 480-81 (Aspen, J.); Weiss v. Coca-Cola Bottling Co., 772 F.Supp. 407, 410-11 (N.D.Ill.1991) (Duff, J.); see also Bertoncini, 712 F.Supp. 1336, 1340 (N.D.Ill.1989) (Duff, J.) (listing cases). As originally passed, Title VII provided only equitable remedies, such as reinstatement and backpay, that an employee could hardly be considered capable of providing. Pommier, 816 F.Supp. at 481;Weiss, 772 F.Supp. at 411. The limited-remedy rationale was undone, however, by the Civil Rights Act of 1991, which altered the remedies available under Title VII to include both compensatory and punitive damages.[FN3]See Vakharia v. Swedish Covenant Hosp., 824 F.Supp. 769, 785 n. 2 (N.D.Ill.1993) (Moran, C.J.); see also Bridges v. Eastman Kodak Co., 800 F.Supp. 1172, 1180 (S.D.N.Y.1992). But see Pacourek v. Inland Steel Co., 858 F.Supp. 1393, 1405-06 (N.D.Ill.1994) (Alesia, J.) (holding limited-remedy rationale still applies, as damages available under Civil Rights Act of 1991 are capped according to size of employer).

*6 In the wake of the Civil Rights Act of 1991, there are two remaining, competing schools of thought on the issue. First, courts finding the federal employment discrimination statutes to create individual liability on the part of co-employees have based that stance on the inclusion of "any agents of" in the definition of employer and on the purposes of the statutes to compensate victims of discrimination and to deter future discrimination. See Vakharia, 824 F.Supp. at 785-86;see also Bertoncini, 712 F.Supp. at 1339 (listing cases). Second, courts finding the federal employment discrimination statutes not to create individual liability on the part of co-employees have explained the "any agent of" language in the definition of employer as a mechanism for incorporating respondeat superior liability into the statutes. These courts then look to the exclusion of small employers from liability (for the ADA and Title VII, an employer must have had fifteen or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.), 6 NDLR P 68
(Cite as: Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.))

Page 6

more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year; the ADEA is the same except the number is twenty employees). Since it would make little sense for Congress to have intended to exempt from liability the owner of a small business but then to make liable an individual supervisor, Congress must not have intended to make the latter liable.[FN4]*See Carlson v. Northwestern Univ.*, No. 93 C 5879, 1994 WL 130763, at *2-3, 1994 U.S.Dist. LEXIS 4770, at *4-7 (N.D.Ill. April 13, 1994) (Norgle, J.); *Finley v. Rodman & Renshaw, Inc.*, No. 93 C 5504, 1993 WL 512608, at *1-2, 1993 U.S.Dist. LEXIS 17308, at *2-5 (N.D.Ill. Dec. 7, 1993) (Leinenweber, J.); *see also Stefanski v. R.A. Zehetner & Assoc.*, 855 F.Supp. 1030, 1032-33 (E.D.Wis.1994).

The second position has now been adopted in all but one of the circuits to have addressed the issue, *compare Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510-11 (4th Cir.1994) (ADEA); [FN5]*Grant v. Lone Star Co.*, 21 F.3d 649, 651-53 (5th Cir.1994) (Title VII); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993) (Title VII); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587-88 (9th Cir.1993) (Title VII & ADEA); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991) (Title VII), *with Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir.1986), and it is the more persuasive interpretation of the federal employment discrimination statutes.[FN6] As a result, the ADA does not create liability on the part of a co-employee, and Count I is dismissed as to Roth.

CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted. Count I is dismissed with prejudice with regard to Roth. Count II is dismissed without prejudice in its entirety. Ostendorf is granted leave to file an amended complaint within 21 days, with a caution that if an amended complaint is to be filed, it must conform with the law set forth in this order.

FN1. Section 5(a) of the IWCA provides, in pertinent part:

No common law or statutory right to recover damages from the employer [or the employer's agents or employees] for injury ... sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act.

820 ILCS 305/5(a) (1994).

Section 11 of the IWCA provides, in pertinent part, that, "The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer" participating in or of a type enumerated in the IWCA. 820 ILCS 305/11 (1994).

FN2. As to the second element, the complaint does allege that the actions were willfully and wantonly undertaken, which for present purposes would appear to support the conduct having been done knowing there was a high probability it would result in severe emotional distress, despite not supporting the specific intent necessary to escape the IWCA bar with regard to Elkay as not "accidental," *see* section I.b., *supra*.

FN3. The ADA, at issue in the present case, simply incorporates the remedies available under Title VII. 42 U.S.C. § 12117(a).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 7
Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.), 6 NDLR P 68
(Cite as: Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.))

FN4. As one court stated, "If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir.1993). A variation on this rationale is found in *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510 (4th Cir.1994), which stated that "it would be incongruous to hold that the ADEA does not apply to the owner of a business employing, for example, ten people, but that it does apply with full force to a person who supervises the same number of workers in a company employing twenty or more."

FN5. The Fourth Circuit may have left open one area where a co-employee may be individually liable, namely, sexual harassment. *Compare Birkbeck,* 30 F.3d at 510 n. 1,*with Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989).

FN6. In examining the issue of co-employee liability, the courts have consistently applied the same rule to all of the federal employment discrimination statutes. To the extent the statutes might be interpreted to support different outcomes on the issue, the ADA might be less likely to give rise to co-employee liability, as its prohibition extends to a "covered entity," 42 U.S.C. § 12112(a), a more difficult term to apply to a human being than the "employer" subject to the prohibition in Title VII, 42 U.S.C. § 2000e-2, and the ADEA, 29 U.S.C. § 623(a).

N.D.Ill.,1994.
Ostendorf v. Elkay Mfg. Co.
Not Reported in F.Supp., 1994 WL 741425 (N.D.Ill.), 6 NDLR P 68

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

**H**Robinson v. Roney Oatman, Inc
N.D.Ill.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
Lewis E. ROBINSON, Jr., Plaintiff,
v.
RONEY OATMAN, INC. & Robert Hauge, Sr.,
Defendants.
**No. 97C8964.**

Nov. 23, 1999.

MEMORANDUM OPINION AND ORDER

HIBBLER, J.
*1 This Court has before it the defendant's Motion for
Summary Judgment (doc. # 61). The plaintiff, Lewis
Robinson filed a seven-count Complaint against
Defendant Roney Oatman alleging sexual harassment,
retaliation, constructive discharge, assault and battery, and
intentional and negligent infliction of emotional distress.
For the reasons stated herein, the defendant's Motion for
Summary Judgment is GRANTED in part and DENIED in
part. This Court will also address Defendant Roney
Oatman's Motion to Strike Certain Portions of Plaintiff's
Response (doc. # 70-1) and Deem as Admitted Certain
Portions of its Rule 56.1(a) Statement (doc. # 70-2). In
addition, the Court will rule on Defendant Roney Oatman's
Motion to Strike Daniel Sherman's Affidavit (doc. # 71).
The issues, being fully briefed, are now ripe for ruling.

With respect to Defendant Roney Oatman's Motion to
Strike Portions of Plaintiff's Response and Deem as
Admitted Statements in it Rule 56.1(a) Statement. (Doc.
# 's 70-1 & 70-2) this Court recognizes that on its face,

Plaintiff's Rule 56.1(b) response was deficient. However,
this Court feels that whatever confusion that existed as to
the Rule 56.1(b) has been rectified. Therefore, the
defendants Motion to Strike (doc. # 's 70-1 & 2) is
DENIED. As for the defendants' Motion to Strike Daniel
Sherman's Affidavit (doc. # 71), this Court DENIES that
motion as well because the evidence presented by the
plaintiff in his response to a motion for summary judgment
need not be in admissible form. *Winskunas v. Birnbaum,
23 F.3d 1264, 1267-68* (7 th Cir.1994). This Court is
convinced that whatever deficiencies existed with Daniel
Sherman's affidavit have since been cured. Furthermore,
this Court declines to issue sanctions for filing a false
affidavit, as has been requested by the plaintiff.

*BACKGROUND*

Lewis Robinson began working at the Roney Oatman's ice
cream plant in August 1992, and continued his
employment until August 1996. During his employment,
the plaintiff worked in the ice cream production, mix
production, and freezer departments of the plant. Plaintiff
alleges that beginning in late 1992 or early 1993,
Defendant Hauge,[FN1] a working supervisor in ice cream
production, repeatedly grabbed Plaintiff's testicles. With
each incident, the plaintiff demanded that Defendant
Hauge stop, yet the plaintiff alleges the assaults continued
on a weekly basis. The plaintiff alleges that in 1993, he
told his supervisors at Roney about the assaults yet they
failed to correct the problem. In January 1996, Plaintiff
submitted a written complaint to Roney
management.[FN2]Thereafter, the plaintiff transferred to the
mix production side of the plant to avoid further contact
with Defendant Hague. After the written complaint, the
plaintiff alleges that the assaults stopped. Furthermore,
two months after Plaintiff filed his complaint, his wife's
position in Roney's accounting department was terminated.
On April 17, 1996, Plaintiff filed a charge with the Equal
Employment Opportunity Commission alleging sexual

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

harassment. The plaintiff alleges that the defendants retaliated against him for making his EEOC charge by assigning him menial duties and asking him to work on the ice cream side of production.

> FN1. Robert Hauge was dismissed as a defendant on January 1, 1999, however, for the ease of discussion, he will hereinafter be referred to as Defendant Hauge.

> FN2. The plaintiff gave his complaint to Chris Oelker, Plant Manager and Tim Waldrop, Assistant Plant Manager. The complaint stated "[t]his is a written complaint against a working supervisor, Bob Hauge Sr., he has been going around grabbing and squeezing my testicles and I'm tired of it. You have already had a verbal complaint a year ago from my self [sic] and now a written one, if it happens again, I will be forced to take further action! Last date of reoccuring [sic] incident 1/18/96." *Def.'s Ex. H.*

### SUMMARY JUDGMENT STANDARD

**\*2** Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Bragg v. Navistar Int'l Trans. Corp., 164 F.3d 373* (7 th Cir.1998); *Leisen v. City of Shelbyville, 968 F.Supp. 409 (S.D.Ind.1997), aff'd 153 F.3d 805* (7 th Cir.1998)."Summary judgment is appropriately entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial. *McKenzie v. Illinois Dept. of Transp. ., 92 F.3d 473, 479* (7 th Cir.1996) (citations omitted).

The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett,* 477 U.S. 317,324 (1986); *Larimer v. Dayton Hudson Corp., 137 F.3d 497* (7 th Cir.1998), *reh'g denied.* A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts which are considered material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson, 477 U.S. at 248.* Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial." *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel, 160 F.3d 1139* (7 th Cir.1998); *Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-21* (7 th Cir.1994), nor may that party rely upon conclusory allegations in affidavits. *Smith v.. Shawnee Library Sys., 60 F.3d 317, 320* (7 th Cir.1995). During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560* (7 th Cir.1996)."However, neither the mere existence of some factual dispute between the parties, nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Lewis v. Simmons Airlines, Inc., 16 F.Supp.2d 978, 981 (C.D.Ill.1998).* Applying the above standard, this Court addresses the defendant's motion.

### ANALYSIS

A. The Plaintiff's Title VII Claims Are Untimely

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 3
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

The defendant's first claim is that the plaintiff's Title VII counts are untimely and should therefore be dismissed. The defendant maintains the plaintiff's claims go beyond the allegations in his EEOC Charge of Discrimination in violation of pertinent case law. Next, the defendant contends that any claims of harassment which allegedly occurred more than 300 days prior to the filing of the EEOC charge should not be considered by the Court because they are time barred. Finally, the defendant claims that because the plaintiff failed to file his Complaint with this Court within 90 days of the issuance of the EEOC's Dismissal and Notice of Rights, summary judgment should be granted in its favor.

*1. Any claims outside the scope of the EEOC charge are barred*

**\*3** The defendant first asks this Court to hold that Plaintiff's claims of retaliation by the defendant and any continuing violation theories be dismissed because they were not included in his EEOC charge. It is the defendant's contention that when the plaintiff filed his EEOC charge in April 1996, he claimed that he had been a victim of discrimination based on his sex. He stated that he had filed a written charge of sexual harassment with his employer, yet no action had been taken. Further, the plaintiff failed to make a claim of retaliation and failed to state that the harassment was a continuing occurrence during the course of his employment.

The well established general rule is that "a Title VII plaintiff may bring only those claims that were included in his EEOC charge."*McKenzie,* 92 F.3d at 481;*Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 501 (7 th Cir.1994); *Bowers v. Radiological Society of North America,* 57 F.Supp.2d 594, 598 (N.D.Ill.1999); *Duhart v. Fry,* 957 F.Supp. 1478 (N.D.Ill.1997)."This rule serves two purposes: affording an opportunity for the EEOC to settle the dispute between the employee and employer and putting the employer on notice of the charges against

it."*Duhart, 957 F.Supp. at 1488* (citations omitted)."A plaintiff may include a claim in a federal complaint that was not brought in charges filed with the EEOC if a two-prong test is satisfied: '(1) the claim is like or reasonably related to the EEOC charges, and (2) the claim in the complaint reasonably could develop from the EEOC investigation into the original charges."*Bowers, 57 F.Supp.2d at 598* (citing *Harper v. Godfrey Co.,* 45 F.3d 143, 148 (7 th Cir.1995)); *Duhart, 957 F.Supp. at 1488.* The allegations in the EEOC complaint and the claims in the federal complaint are reasonably related if there is a factual relationship between the two.*Harper, 45 F.3d at 148.* "This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals."*Id.* Furthermore, this Court should consider "whether the complaint's claims and the EEOC charge cover the same time period."*Duhart, 957 F.Supp. at 1488.* This Court should examine the factual allegations in the body of the EEOC charge. *Cheek,* 31 F.3d at 500. In other words, "the proper investigation would be into what EEOC investigation could reasonably be expected to grow from the original complaint."*Babrocky v. Jewel Food Co.,* 773 F.2d 857, 864 n. 2 (7 th Cir.1985).

The plaintiff filed his charge with the EEOC on April 17, 1996.[FN3]In this case, there can be no question that the plaintiff did not include his claim of retaliation against his wife in his EEOC charge, even though her position was terminated on March 22, 1996, a month before he filed his charge. If the purpose of the EEOC complaint is to give the EEOC an opportunity to investigate all claims and to notify an employer of the charges against it, then Plaintiff has failed to meet this burden. "Allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations."*Cheek,* 31 F.3d at 503. It is apparent that the plaintiff knew that his wife was fired at the time he filed his charge. It is also clear that his failure to include this portion of his retaliation claim did not afford the EEOC nor Defendant Roney Oatman the opportunity to investigate this charge. Because his claim of retaliation

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 4
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

against his wife involves neither the same conduct nor the same individuals, this claim is DISMISSED and Summary Judgment is GRANTED with respect to these claims.

FN3. The plaintiff's EEOC charge states,

I. I was hired by the above named company on August 1, 1992 as a Freezer Worker. In January 1996 I filed a written complaint of sexual harassment with management officials of the company. To date no action has been taken against the harasser.

II. I believe I have been discriminated against in violation of Title VII because of my sex, male in that no action has been taken to stop the sexual harassment.

*Def.'s Ex. J.*

2. *The bulk of the claims are time barred by the 300-day filing requirement*

**\*4** The defendant next argues that Plaintiff is time barred from asserting any Title VII claims, or other acts which occurred more than 300 days before the April 17, 1996 date which he filed his EEOC charge. Therefore, Defendant maintains that any incidents of harassment which occurred prior to June 22, 1995 are barred from this litigation. The plaintiff counters that the defendant's actions constitute a continuing violation and therefore they should be linked with actions falling within the limitations period.

Plaintiffs in Illinois must file EEOC charges within 300 days of the allegedly unlawful employment practice. *Speer*

*v. Rand McNally & Co.,* 123 F.3d 658, 662 (7th Cir.1997); *Duhart,* 937 F.Supp. at 1483;*Moore v. Allstate Ins. Co.,* 928 F.Supp. 744, 750 (N.D.Ill.1996). However, "standard principles of limitations law, including the continuing violation theory, the discovery rule, equitable tolling, and equitable estoppel, apply to Title VII cases."*Duhart,* 937 F.Supp. at 1483. The continuing violation doctrine allows a plaintiff to obtain relief from a time barred act of discrimination by linking it with acts which fall within the limitations period. *Id.;Gurzynski v. Area 604/605 Local 6266,* No. 98 C 2971, 1999 WL 728096,*3 (N.D.Ill. Sept. 14, 1999).

The continuing violation doctrine is applicable only it "it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in light of events that occurred later, within the period of the statute of limitations."

*Gurzynski,* 1999 WL 728096, at *3 (citing *Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1167 (7th Cir.1996)).*"To succeed under the continuing violation theory, a plaintiff must show that the alleged acts of discrimination were part of an ongoing pattern of discrimination and that at least one of the alleged acts of discrimination occurred within the relevant limitations period. *Duhart,* 957 F.Supp. at 1483. Should the plaintiff succeed in showing an ongoing pattern, this Court will treat the series of acts as one continuous act within the 300 day limitations period. *Gurzynski,* 1999 WL 728096, at *3; *Duhart,* 957 F.Supp. at 1483. The factors this Court must consider when applying the continuing violation doctrine are, (1) whether the alleged acts involve the same type of discrimination, (2) whether the alleged acts are recurring or are instead isolated events, and (3) whether the act has a degree of permanence which should trigger the plaintiff's awareness. *Selan v. Kiley,* 969 F.2d 560, 565 (7th Cir.1992). Where it is evident that a plaintiff should have been aware that he was a victim of harassment long before he brought suit, he may bring an action "provided that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 5
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

last of harassment occurred within the statute of limitations, [however] the plaintiff cannot reach back and base [his] suit on conduct that occurred outside the statute of limitations."*Duhart, 957 F.Supp. at 1484.*

**\*5** In this case, the plaintiff cannot reach back and include incidents that occurred outside the 300 day limitations period. Although the plaintiff has alleged that same type of discrimination occurred over the course of his employment with Defendant Roney Oatman, these acts were recurring and should have triggered him to his right to sue before he filed his EEOC complaint in 1996. This Court recognizes that even though there may be a dispute as to when the incidents of harassment ceased, there can be no question that they began more than 300 days prior to the filing of the EEOC charge. It would not have been unreasonable to expect the plaintiff to have brought suit before the statute ran on the conduct, and therefore, all conduct which falls before the 300 day statute of limitations period is DISMISSED. Therefore, "[a]ny act occurring outside the filing period 'may constitute relevant background evidence in a proceeding in which the status of a *current practice* is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." ' *Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1036 fn. 2, (7 th Cir.1998). Defendants' Motion for Summary Judgment is therefore GRANTED with respect to all claims falling outside the 300 day statute of limitations period.

### 3. A genuine issue of fact exists as to whether the plaintiff's EEOC complaint is time barred

The defendant also argues that the plaintiff's EEOC complaint should be dismissed because he failed to file it within 90 days of receiving his Right to Sue Letter. The plaintiff counters that he exercised due diligence in trying to receive his Right to Sue Letter and any delay in filing his Complaint was through no fault of his own.

A civil action alleging a Title VII violation must be filed within 90 days of notice that the Commission has dismissed the suit. 42 U.S.C. § 2000e-5(f)(1). The general rule is that the 90-day period begins to run when the plaintiff actually receives notice. *Jones v. Madison Service Corp.,* 744 F.2d 1309, 1312 (7 th Cir.1984). However, in cases where there are exceptions, the Seventh Circuit has instituted a three-part test to determine when the 90-day period for filing a Title VII action begins. *Bond v. American Medical Assoc.,* 764 F.Supp. 122, 124 (N.D.Ill.1991); *Trinkle v. Bell Litho, Inc.,* 627 F.Supp. 764, 765 (N.D.Ill.1986). When the plaintiff is represented by an attorney, and the EEOC has been informed of the representation, receipt by the attorney begins the 90-day period. *Jones,* 744 F.2d at 1312, 1314. Where someone other than the plaintiff or his attorney receives notice, such as a member of the plaintiff's household, the limitations period does not begin to run until the plaintiff or his attorney receives such notice. *Archie v. Chicago Truck Drivers, Helpers & Warehouse Workers Union,* 585 F.2d 210 (7 th Cir.1978). In cases where the plaintiff's receipt of the Right to Sue Letter is otherwise delayed, then courts are to apply a fault approach. *St. Louis v. Alverno College,* 744 F.2d 1314, 1317 (7 th Cir.1984). Under the fault approach, a delay in the plaintiff's receipt of notice, which is caused by the plaintiff's lack of diligence, will not delay the running of the statute of limitations. *St. Louis,* 744 F.2d at 1317;*Jones,* 744 F.2d at 1313.

**\*6** In this case, the defendant maintains that because the plaintiff did not file his Complaint with the Court until 274 days after the EEOC issued his Right to Sue Letter, then his claims are barred. The plaintiff counters that he exercised due diligence in order to obtain the letter and the delay in its receipt was through no fault of his own. A genuine issue of material facts exists as to whether the plaintiff was in fact diligent in his pursuit of his Right to Sue Letter. At one point in his deposition testimony, the plaintiff claims that he called the EEOC in either April or May and then did not make any further calls until late

Not Reported in F.Supp.2d                                                                                      Page 6
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

September. *Def.'s Ex. A.* at 256 & 301. However, later in his deposition testimony, the plaintiff claims that he made phone calls to the EEOC in June, July, and August of 1997. *Def.'s Ex. A.* at 373. Because a genuine issue of material fact exists as to whether the plaintiff in fact diligently pursued receipt of his Right to Sue Letter, this is a question best left for a jury and this Court now DENIES the defendants' Motion for Summary Judgment on the issue.

B. Plaintiff's Sexual Harassment Claims Have Merit

Title VII provides that "[i]t shall be unlawful employment practice for a employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex."42 U.S.C.2000e-2(a)(1)."Sexual harassment which is so 'severe or pervasive' as to 'alter the conditions of the victim's employment and creates an abusive working environment' violates Title VII."*Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1032 (7ᵗʰ Cir.1998) (quoting *Faragher v. City of Boca Raton,*-U.S. -, -, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1986) (internal citations and quotations omitted). The Seventh Circuit has set forth a five-part test for establishing a Title VII claim of sexual harassment. First, the employee must show that he was a member of a protected class. Next, he must show that he was subjected to unwanted sexual advances or physical conduct of a sexual nature. Third, the harassment complained of must be based on sex. Additionally, the charged sexual harassment must have unreasonably interfered with the employee's work performance. Finally, there must be a basis for employer liability. *Id.;Rennie v. Dalton,* 3 F.3d 1100, 1107 (7ᵗʰ Cir.1993).

In this case, the plaintiff has met all the *Parkins* elements. As for the first element, the plaintiff is a member of a protected class. The Supreme Court has recently held that Title Vii's protection against sexual harassment extends to men as well as women. *Oncale v. Sundowner offshore Services, Inc.,*-U.S. -; 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Because this Court must construe the facts in the plaintiff's favor, there can be no doubt that based upon the allegations, the plaintiff was subjected to unwanted sexual contact. This Court is of the opinion that the harassment was based on the plaintiff's sex, and that harassment interfered with his work performance. Finally, the plaintiff has successfully alleged that there may be a basis for Defendant Roney Oatman's liability in that it may have been negligent in remedying the harassment.

1. *Defendant Roney Oatman's Conduct may have been negligent*

*7 As an initial matter, this Court must first determine whether Defendant Hauge is a supervisor or rather a co-worker. "An employer's liability for hostile work environment sexual harassment depends upon whether the harasser is the victim's supervisor or merely a co-employee."*Parkins,* 163 F.3d at 1032. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."*Burlington Indus., Inc. v. Ellerth,*-U.S. -, -, 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998)."[T]he Supreme Court has made clear that heightened liability exists in this context only because a supervisor's conduct is made possible by the 'abuse of his supervisory authority' his apparent authority, or because his supervisory position aided him in accomplishing the harassment."*Parkins,* 163 F.3d at 1033 (citing *Faragher,*-U.S. at -, 118 S.Ct. at 2290)." "[B]ecause liability is predicated on misuse of supervisory authority, the touchstone for determining supervisory status is the extent of authority possessed by the purported supervisor." *Id.* "Because employers do not entrust mere co-employees with any significant authority with which they might harass a victim, employers are liable for a co-employee's harassment only 'when they have been negligent either in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 7
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

discovering or remedying the harassment." ' *Parkins,* 163 F.3d at 1032;*Perry v. Harris Chernin, Inc.,* 126 F.3d 1010, 1013 (7 th Cir.1997). "An employer's legal duty in co-employee harassment cases will be discharged if it takes 'reasonable steps to discover and rectify acts of sexual harassment of its employees." *Id.*

In this case, Defendant Hauge was not a supervisor. Defendant's Hauge's duties as a working supervisor did not include the power to hire or fire employees, or to review employees work. Defendant Hauge was a member of the union and was not considered part of the management team. Defendant Hauge was compensated at an hourly rate and received fifty cents more per hour for functioning as a working supervisor.

[I]t is manifest that the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee. Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes imputing liability to the employer.

*Parkins,* 163 F.3d at 1034. This being the case, there can be no doubt that Defendant Hauge was a co-worker rather than a supervisor of the plaintiff. Therefore, this Court must determine whether Defendant Roney Oatman was negligent in either discovering or remedying the harassment.

"An employer's legal duty in co-employee harassment cases will be discharged if it takes reasonable steps to discover and rectify acts of sexual harassment by its employees. *Parkins,* 163 F.3d 1035. In order to hold the employer liable, it must have either notice or knowledge of the harassment. *Id.* An employer may receive notice from a department head or someone else that the plaintiff "reasonably believed was authorized to receive and

forward (or respond to) a complaint of harassment."*Young v. Bayer Corp.,* 123 F.3d 672, 674 (7 th Cir.1997). In this case, Defendant Roney Oatman alleges that Plaintiff failed to inform management of the sexual harassment until he submitted his written complaint in January 1996. However, in his deposition testimony, the plaintiff asserts that he verbally informed his union steward, business agent, and two managers, Tim Waldrop and Chris Oelker on numerous occasions between 1994 and 1996. He even goes so far as to allege a meeting in 1995 between Paul Brennan, the union steward, Waldrop and Oelker. Plaintiff claims that as a result of this meeting he decided not to file a grievance with the union because he believed Oelker would rectify the situation. *Pls.' Ex. 2* at 156-162.

**\*8** There can be no doubt that the plaintiff acknowledges that from the day of his written complaint until the time he terminated his employment, there were no further assaults. Both parties attribute this to the fact that Plaintiff was transferred to a different section of the plant. Both parties take credit for this occurrence, and argue as to the other parties true involvement in the event. This dispute is neither here nor there. The fact of the matter remains that after Plaintiff submitted his written request to Defendant Roney Oatman no further episodes occurred. Although Plaintiff alleges that there were instances when he was asked to again work side by side with Defendant Hauge, he does not allege that Defendant Hauge assaulted him again. The critical inquiry which remains is whether Defendant Roney Oatman was on notice of the harassment between June 22, 1995, 300 days prior to filing to EEOC charge, and January 18, 1996, the date the written complaint gives as the date of the last instance of harassment. Based upon the papers submitted by the parties, this Court cannot answer that question and therefore feels that the issue should proceed to trial.[FN4]As such, a genuine issue of material fact remains as to whether Defendant Roney Oatman was aware of the harassment and failed to remedy it. Therefore, the defendant's Motion for Summary Judgment as to whether Defendant Roney Oatman was negligent is DENIED.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

FN4. Because the plaintiff has failed to submit the dates of his verbal complaints, and this Court must construe allegations in favor of the plaintiff, a genuine issue of material fact exists as to the dates of those complaints.

*2. Plaintiff has established the sexual harassment was motivated by his sex*

The defendant also argues that the plaintiff cannot prove that the alleged sexual harassment was motivated by his sex, and therefore, summary judgment should be granted in its favor. The defendant contends that because the plaintiff does not know what motivated Defendant Hauge to sexually harass him, he has failed to prove that Defendant Hauge was motivated by plaintiff's sex. The Court now rejects this line of circular reasoning and holds that summary judgment should be DENIED on this issue.

"Title VII's prohibition of discrimination 'because of sex' protects men as well as women." *Oncale v. Sundowner Offshore Services, Inc.,*-U.S. -, -; 523 U.S. 75, 118 S.Ct. 998, 1001, 140 L.Ed.2d 201 (1998) (citing *Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 682, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983)). "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina [tion] ... because of ... sex.' " *Id.* at 1002.However, "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex ." *Id.* This Court should judge the objective severity of the harassment under a reasonable person standard in light of all the circumstances. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* at 1003. Where,

*9 it appears plain on the record as a whole that the statements or conduct in question were nothing other than vulgar provocations having no causal relationship to the plaintiff's gender as a male, the sexual content or connotations of those statements or conduct will not alone raise a question of fact as to the sex-based character of the harassment. On the other hand, when the context of the harassment leaves room for the inference that the sexual overlay was not incidental-that the harasser was genuinely soliciting sex from the plaintiff or was otherwise directing harassment at the plaintiff because of the plaintiff's sex-then the task of deciding whether the harassment amounts to sex discrimination will fall to the finder of fact.

*Sheperd v. Slater Steels Corp.,* 168 F.3d 998, 1010-11 (7th Cir.1999)(quoting *Johnson v. Hondo, Inc.,* 125 F.3d 408, 413 (7th Cir.1997)) (internal quotation marks omitted).

The defendant claims that summary judgment should be granted in its favor because the plaintiff cannot prove the incidents of "gender-neutral horseplay" were motivated by the plaintiff's sex. The defendant points to *Johnson* to support its contention that Plaintiff cannot prove that he was harassed because of his sex. However, this Court finds *Johnson* readily distinguishable from the case at hand. In *Johnson,* the Seventh Circuit held that the plaintiff had failed to prove that he was harassed because of his gender. The key factors which enabled the Court to reach its conclusion were the fact that the defendant had used expletives and vulgar language with the plaintiff. "Besides the sexual content of [the defendant's] remarks there is absolutely nothing in this record that supports a reasonable inference that the remarks were directed at Johnson on account of his gender." *Johnson,* 125 F.3d at 412. "Most unfortunately, [vulgar] expressions ... are commonplace in certain circles, and more often than not, when these expressions are used (particularly when uttered by men

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 9
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

speaking to other men), their use has no connection whatsoever with the sexual acts to which they make reference-even when they are accompanied, as they sometimes were here, with a crotch-grabbing gesture."[FN5]*Id.* In this case, Defendant Hauge's conduct went beyond vulgar language and locker room antics, the plaintiff alleges that at least 100 times over a two-and-a-half to three year period the defendant grabbed his testicles. In light of the fact that the plaintiff claims that he repeatedly told Defendant Hauge to stop this behavior, and then turned to his managers for assistance, this Court finds that a reasonable person in the plaintiff's position would find the situation hostile. This Court finds Defendant Hauge's conduct severe and pervasive enough to create an objectively hostile or abusive work environment in compliance with *Harris.* Although there is no hard and fast evidence that Defendant Hauge was motivated by sexual desire when he harassed the plaintiff, this Court finds that the facts are sufficiently analogous to that of *Sheperd* and holds that the "finder of fact, evaluating this harassment in context, might reasonably conclude from the relentless[ ] [physical contact] that [Plaintiff] was harassed because he was a man."*Sheperd,* 168 F.3d at 1011. "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive."*Oncale v. Sundowner Offshore Services, Inc.,*-U.S. -, -, 523 U.S. 75, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). Therefore, the defendants Motion for Summary Judgment on the plaintiff's sexual harassment claims are DENIED.

> FN5. The defendant in *Johnson* did not touch the plaintiff's genitals, but rather the defendant touched himself as if masturbating through his clothes.

## C. Plaintiff's Title VII Retaliation Claims Are Without Merit

*10 Title VII prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful practice by [Title VII]."42 U.S.C. § 2000e-3(a). In order to withstand a motion for summary judgment on a retaliation claim, a plaintiff must prove (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) a causal link between the protected activity and the adverse action exists.*Essex v. United Parcel Service,* 111 F.3d 1304, 1309 (7th Cir.1997); *McClendon v. Indiana Sugars, Inc.,* 108 F.3d 789, 796 (7th Cir.1997); *Spearman v. Ford Motor Comp.,* No. 98 C 452, 1999 WL 754568,*7 (N.D.Ill. Sept. 9, 1999); *Harris v. City of Harvey,* 993 F.Supp. 1181, 1187 (N.D.Ill.1998). As to the first element of the prima facie case, filing an EEOC complaint is a protected activity under Title VII. *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996). The present dispute is with the second and third element. The defendant maintains that no causal connection exists between any adverse action and the filing of the EEOC charge. As will be discussed more fully, this Court is of the opinion that the root of the claim is flawed because the plaintiff has failed to allege adverse employment action.

### 1. *Plaintiff may not maintain a claim of retaliation against his ex-wife*

As this Court has previously stated, although the plaintiff knew that his wife was recently terminated by Defendant Oatman, he failed to include a retaliatory allegation in his EEOC charge based upon that action. Because his retaliation claim with regards to his wife's discharge did not sufficiently notify the EEOC or Defendant Roney Oatman of this claim, the defendants' summary judgment motion is GRANTED.

### 2. *Plaintiff's other claims of retaliation are without merit*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 10
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

This Circuit has held that adverse employment action consists of termination of employment, a demotion as evidenced by a decrease in wages or salary, a less distinguished job title, a material loss of benefits, or significantly diminished job responsibilities. *Dev v. Colt Construction and Development Co.*, 28 F.3d 1446 (7 th Cir.1994)."[A]dverse employment action is not limited solely to loss or reduction of pay or monetary benefits. It can encompass other forms of adversity as well."*Collins v. State of Illinois*, 830 F.2d 692, 703 (7 th Cir.1987). However, "[w]hile adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is actionable adverse action. Otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." ' *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7 th Cir.1996) (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7 th Cir.1996)).

In this case, the plaintiff alleges that he was asked to clean the exhaust fans twice, the ceilings twice, the drains once, and work on the ice cream production side of the plant five or six times. As for the plaintiff's allegation that working on the ice cream side of the production line amounted to retaliation, in his deposition testimony, the plaintiff admits to being asked to work on the ice cream side of the line while he worked in other areas of the plant, even before he filed his EEOC charge. In fact, the plaintiff admits that it was customary for management to ask workers from different parts of the plant to help with ice cream production when help was needed. *Pl.'s Ex. 2* at 201-202. Additionally, Plaintiff concedes that Defendant Hauge no longer harassed him after January 1996, therefore, he was not harmed by working on the ice cream production side five or six times over a three and a half month period. *Pl.'s Ex. 2* at 219. As for the menial tasks which the plaintiff alleges amount to retaliation for filing his EEOC charge, minor changes in an employees routine do not give rise to adverse employment action. *Spearman,*

1999 WL 754568, at *7. In this case, the plaintiff continued to hold his job title at the plant with no decrease in wages, benefits, or title. Although the plaintiff attempts to argue that the additional menial jobs tasks were retaliatory, Defendant Roney Oatman has offered a legitimate business reason for the requested duties.FN6This being the case, this Court finds that the plaintiff has failed to meet the second criteria for a finding of retaliation. Therefore, the defendant's summary judgment motion on the issue of retaliation is hereby GRANTED.

> FN6. Defendant Roney Oatman maintains, and has produced evidence that it one of its largest customers, Bresler's Ice Cream Company, terminated its manufacturing agreement in March 1996. As a result of the loss of one of its biggest accounts, Defendant Roney Oatman claims that it asked all its employees to perform perfunctory duties in an attempt to avoid layoffs.

### D. Plaintiff Has Failed to Make a Claim for Constructive Discharge

*11 A plaintiff may bring constructive discharge claims under Title VII where that plaintiff has demonstrated that his discriminatory working conditions were so intolerable that they would have compelled a reasonable person to resign from the position. *Perry v.. Harris Chernin, Inc.*, 126 F.3d 1010, 1015. "Circumstances that might be adequate to establish a hostile working environment for purposes of Title VII will not necessarily support a constructive discharge claim, which requires the plaintiff to demonstrate harassment that is more severe or pervasive."*Chisolm v. Foothill Capital Corp.*, 3 F.Supp.2d 925, 936 (N.D.Ill.1998) (citing *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). Therefore, "an employee must seek legal redress while remaining in his or her job unless confronted with an aggravated situation beyond ordinary discrimination."*Id.* (internal citations and quotations omitted). In other words, "a constructive

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 11
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

discharge claim requires evidence that quitting was the only way the plaintiff could extricate herself from the intolerable conditions."*Sweeney v. West,* 149 F.3d 550, 558 (7 th Cir.1998).

In this case, this Court finds that the plaintiff has failed to make a sufficient constructive discharge claim. As has been stated, the assaults stopped immediately after the plaintiff submitted his written request to management outlining his problem. Furthermore, the plaintiff has stated that the reason he left his position at the plant was not because the conditions were so intolerable that he could no longer stay with the company, instead he left because he felt that management had failed to handle the situation with Defendant Hauge properly. *Pl.'s Ex. 2* at 167. The fact that the plaintiff felt that more could have been done to remedy the situation is insufficient to support a claim for constructive discharge. "Whatever lingering dissatisfaction [the plaintiff] may have felt regarding the resolution of [his] complaint or [his] position at work, [his] situation cannot reasonably be described as intolerable."*Saxton v. American Telephone & Telegraph Co.,* 10 F.3d 526, 535 (7 th Cir.1993). Therefore, the defendant's Motion for Summary Judgment on the constructive discharge claim is hereby GRANTED.

E. Plaintiff's State Law Claims Must be Dismissed as a Matter of Law

The defendant maintains that Plaintiff's state law claims must fail as a matter of law because not only is there no basis for vicarious liability for the state law claims, but those claims are preempted by the Illinois Worker's Compensation Act ("IWCA"), 820 ILCS 305/1 et seq., and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 et seq. The plaintiff counters that issues of fact preclude this Court from granting summary judgment in the defendant's favor. This Court disagrees with the plaintiff's assumption and finds that based on the facts before this Court, summary judgment should be granted in

the defendant's favor.

1. *Defendant Roney Oatman is not liable for Defendant Hauge's conduct*

*12 The Supreme Court has recognized that lower courts have addressed sexual harassment between co-workers under a negligence standard and have therefore "implicitly treated such harassment as outside the scope of common employees' duties."*Faragher v. City of Boca Raton,*-U.S. -,-; 524 U.S. 775, 118 S.Ct. 2275, 2289, 141 L.Ed.2d 662 (1998)."The common law rule is that an employer is liable for intentional torts of its employees committed in furtherance of their employment."*Shager v.. Upjohn,* 913 F.2d 398, 404 (7 th Cir.1990) (citations omitted)."If one low-level employee makes sexual advances to another, his conduct is so unrelated to the employer's business that the employer will ordinarily be excused from liability under the doctrine of respondeat superior; the employer's own fault must be shown."*Id.* at 405.When determining whether an employee's acts are within the scope of his employment, "the focus is generally upon the issues of whether the act was conducted substantially within the constraints of authorized time and location of employment, and whether the conduct was actuated *at least in part by a purpose to further the employer's business."*Randi F. v. High Ridge YMCA,* 170 Ill.App.3d 962, 120 Ill.Dec. 784, 524 N.E.2d 966, 970 (Ill.App.Ct.1988)(emphasis added).

In this case, although a genuine issue of material fact exists as to whether Defendant Roney Oatman had notice and failed to curb the alleged sexual harassment, those issues of fact do not bar a finding of summary judgment where the law is clear and Defendant Hauge's alleged conduct was purely for his own interest. Because the plaintiff has failed to prove that the alleged common law torts were in furtherance of or within the scope of Defendant Hauge's employment, this Court cannot find Defendant Roney Oatman liable under a theory of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 12
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

respondeat superior. Allegations of common law tort "can only be attributed to defendants by means of respondeat superior or on the theory that defendants implicitly approved of the harassment by ignoring evidence that it was occurring, ... are exactly those types of claims preempted by the [IWCA]."*Jaskowski v. Rodman & Redshaw, Inc.*, 813 F.Supp. 1359, 1362 (N.D.Ill.1993).[FN7] Therefore, the defendants' Motion for Summary Judgment on the plaintiff's vicarious liability claims is GRANTED.

> FN7. The implications of the Illinois Worker's Compensation Act will be discussed more fully below.

*2. Plaintiff's Tort Claims are Preempted by Illinois Law*

a. Illinois Human Rights Act

One purpose of bringing civil rights actions under the IHRA is to eradicate sexual harassment in the workplace. As a means to achieving that goal the Illinois legislature created the Illinois Human Rights Commission in which it vested exclusive jurisdiction over allegations of sexual harassment constituting civil rights violations.[FN8] Accordingly, the IHRA preempts a common law action seeking redress for civil rights violations.[FN9] The Supreme Court of Illinois has held that an allegation of sexual harassment is merely incidental to the ordinary common law tort claims of assault and battery. *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 227 Ill.Dec. 98, 687 N.E.2d 21, 23 (Ill.1997). "An action to redress a civil rights violation has a purpose distinct from a common law tort action."*Id.* at 24. The court in *Maksimovic* went on to explain that assault and battery

> FN8. IHRA defines sexual harassment as "any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature

when ... such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment."775 ILCS 5/2-101(E).

> FN9. Civil rights violations include claims of sexual harassment. 775 ILCS 5/2-102(D).

*13 are long-recognized tort actions which exist wholly separate and apart from a cause of action for sexual harassment under the Act. To the extent that the plaintiff has alleged the elements of each of these torts without reference to legal duties created by the Act, [he] has established a basis for imposing liability on the defendants independent of the Act.

*Id.* at 23. The grant of exclusive jurisdiction to the Illinois Human Rights Commission "was intended to promote the efficient and uniform processing of state civil rights claims-not common law tort claims. Assault [and] battery ... existed long before the legislature became interested in sexual harassment and are intended to redress violations of bodily integrity and personal liberty."*Id.* at 24. The IHRA only preempts those tort claims which are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself."*Id.* Therefore, should the plaintiff establish the necessary elements of the these torts, independent of any legal duty created by the IHRA, his tort claims of assault and battery will not inextricably linked to a civil rights violation such that this Court has jurisdiction over those claims.

In this case, the plaintiff's state law claims are not barred by IHRA. This Court finds that his claims of assault, battery, and infliction of emotional distress are not so inextricably linked with his claims of sexual harassment as to bar this Court's exercise of subject matter jurisdiction over those claims. Contrary to the defendants contention, the plaintiff's state law claims do not necessarily flow from

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 13
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

his sexual harassment claims because "[a] legislative intent to abolish all common law torts factually related to sexual harassment is not apparent from a plain reading of the statute."*Maksimovic,* 227 Ill.Dec. 98, 687 N.E.2d at 24. Therefore, summary judgment based on the Illinois Human Rights Act is DENIED.

### b. Illinois Worker's Compensation Act

The fact that the plaintiff's state law claims are not barred under IHRA does not end this Court's analysis however. The defendant also claims that IWCA acts as a bar to the plaintiff's claims. This Court agrees with the defendant's assessment and, therefore, GRANTS summary judgment barring the plaintiff's state law claims.

The IWCA provides in relevant part:

[n]o common law or statutory right to recover damages from the employer ... for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act.

820 ILCS 305/5(a). The Seventh Circuit has held that a "sexually harassing co-employee is ... a risk inherent in employment."*Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 323 (7th Cir.1992). The court in *Juarez* went even further to hold that state law claims, such as assault and infliction of emotional distress, which are inextricably linked to an plaintiff's employment, are barred by the IWCA. *Id.* at 324.It is because sexual assaults are compensable under the IWCA that the IWCA generally preempts common law torts based on those assaults. "In order to avoid the bar of the Workers Compensation Act, a plaintiff suing [his] employer must 'prove either that the injury (1) was

accidental, (2) did not arise from ... [his] employment, (3) was not received during the course of employment or (4) was noncompensable under the Act." ' *Id.* at 323 n. 4 (quoting *Collier v. Wagner Castings Co.,* 81 Ill.2d 229, 41 Ill.Dec. 776, 408 N.E.2d 198, 202 (1980)). A plaintiff who alleges assaults suffered at the workplace, during work hours, at the hands of a co-worker are in turn, unable to prove that his assault and battery did not occur at work, during the course of his employment, nor may he prove the assault and battery are noncompensable under the Act.*Quiroz v. Ganna Construction,* No. 97 C 480, 1998 WL 386344,*3 (N.D.Ill. July 8, 1998). Accordingly, the plaintiff's last resort is to prove that the assault was not an accident with respect to Defendant Roney Oatman, in compliance with the first element of the *Juarez* test.. To do so he must prove that Defendant Roney Oatman or its alter ego intentionally inflicted, commanded, or expressly authorized the injurious act. *Meerbey v. Marshall Field and Co.,* 139 Ill.2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222, 1226 (1990).

**\*14** Plaintiff has failed to allege that Defendant Roney Oatman was directly involved in his assaults through the intentional infliction or the express authorization of them. Defendant Roney Oatman "cannot be said to have specifically commanded or expressly authorized the intentional torts of co-workers simply because it knew or should have known that [Defendant Hauge] was harassing [the plaintiff]."*Fortenberry v. United Air Lines,* No. 96 C 3198, 1997 WL 457499,*5 (N.D.Ill. Aug. 7, 1997). Therefore, Plaintiff's claims are barred by IWCA unless he can prove that Defendant Hauge was an alter ego of Defendant Roney Oatman. In order to prove that Defendant Hauge was an alter ego of his employer, he "must in a practical sense speak [ ] for the company" in such a way that he possesses "the authority to make decisions and set policy on behalf of" his employer." *Daulo v. Commonwealth Edison,* 938 F.Supp. 1388, 1406 (N.D.Ill.1996)(quoting *Crissman v. Healthco Int'l, Inc.,* No 89 C 8298, 1992 WL 223820,*9 (N.D.Ill. Sept. 2, 1992))."It is clear, however, that status as a foreman, supervisor, or manger, by itself, will not suffice."*Id.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.))

Page 14

(internal quotations and citations omitted). There can be no doubt that under the standard articulated by *Daulo* and *Crissman,* Defendant Hauge was not an alter ego of Defendant Roney Oatman.

In this case, the plaintiff has failed to allege that Defendant Roney Oatman expressly authorized or specifically commanded Defendant Hauge's conduct. Likewise, he has failed to assert that Defendant Hauge was an alter ego of Defendant Roney Oatman. Therefore, his claims of assault, battery, negligent and intentional infliction of emotional distress are barred by IWCA, and as such this Court is without jurisdiction to hear those claims. As such, Defendants' Motion for Summary Judgment based on the Illinois Worker's Compensation Act is GRANTED.

### CONCLUSION

Therefore, this Court GRANTS Defendant Roney Oatman's Motion for Summary Judgment in part. The issues that are dismissed are Plaintiff's retaliation claim, both with regard to his wife's termination and his menial duties claim; constructive discharge claim; his state law claims; and any claims which occurred more than 300 days prior to his filing his EEOC complaint. However, this Court finds that genuine issues of material fact remain as to whether Plaintiff's EEOC complaint is not time barred, Defendant Roney Oatman was negligent in handling the sexual harassment, and Defendant Hauge's harassment of Plaintiff was motivated by the plaintiff's sex. As such, those issues survive the defendant's Motion for Summary Judgment, and the Court DENIES the motion on those issues.

N.D.Ill.,1999.
Robinson v. Roney Oatman, Inc
Not Reported in F.Supp.2d, 1999 WL 1102694 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**U.S. Department of Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

CERTIFIED MAIL
5072 9134

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

Ms. Linda J. Brumfield
1401 W. Irving Park Rd.,#2R
Chicago, IL  60613

January 10, 2008

Re:  EEOC Charge Against Chicago Police Department
     No. 440200701346

Dear Ms. Brumfield:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.  If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney.  If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires.  Your request to the Court should be made well before the end of the time period mentioned above.  A request for representation does not relieve you of the obligation to file suit within this 90-day period.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                         Sincerely,

                    Grace Chung Becker
              Acting Assistant Attorney General
                   Civil Rights Division

          by  *Karen L. Ferguson*

                    Karen L. Ferguson
               Supervisory Civil Rights Analyst
               Employment Litigation Section

cc:  Chicago District Office, EEOC
     Chicago Police Department

**EXHIBIT**

C

EEOC FORM 131 (5/01)

# U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Ms Eileen Geary, Esq.<br>Chief Assist. Corp. Counsel<br>CITY OF CHICAGO<br>Department of Law<br>30 N. LaSalle St., Rm 1020<br>Chicago, IL 60602 | **Linda J. Brumfield** |
| | THIS PERSON (*check one or both*) |
| | [X] Claims To Be Aggrieved |
| | [ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**440-2007-01346** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act     [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act     [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **22-DEC-06** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by ____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by ____ to ____

    If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| **Monique Debusmann,**<br>**Enforcement Supervisor** | **Chicago District Office - 440**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |
|---|---|
| *EEOC Representative* | |
| *Telephone* **(312) 886-0435** | |

Enclosure(s): [X] Copy of Charge

### CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN  [ ] AGE  [ ] DISABILITY  [ ] RETALIATION  [ ] OTHER

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **November 27, 2006** | **John P. Rowe,**<br>**District Director** | *John P. Rowe (JS)* |

EEOC Form 212-A (3/98)

## U.S. Equal Employment Opportunity Commission

TO:    **Illinois Department Of Human Rights**
**100 West Randolph Street**
**Floor 10-100**
**Chicago, IL 60601**

Date    **November  27, 2006**
EEOC Charge No.
**440-2007-01346**
FEPA Charge No.

DEPT. OF HUMAN RIGHTS
**NOV 2 7 2006**
**RECEIVED**

CHARGE TRANSMITTAL

SUBJECT:

_____**Linda J. Brumfield**_____    v.    _____**CHICAGO POLICE**_____
*Charging Party*                      *Respondent*

Transmitted herewith is a charge of employment discrimination initially received by the:

☒ EEOC    ☐ _____ on _____
                          *Name of FEPA*              *Date of Receipt*

[X] Pursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC.

☐ Pursuant to the worksharing agreement, this charge is to be initially investigated by the FEPA.

☐ The worksharing agreement does not determine which agency is to initially investigate the charge.

☐ EEOC requests a waiver          ☐ FEPA waives

☐ No waiver requested             ☐ FEPA will investigate the charge initially

*Please complete the bottom portion of this form to acknowledge the receipt of the charge
and, where appropriate, to indicate whether the Agency will initially investigate the charge.*

Typed Name of EEOC or FEPA Official
**John P. Rowe, District Director**

Signature/Initials
*John P. Rowe (13)*

_____**Linda J. Brumfield**_____    v.    _____**CHICAGO POLICE**_____
*Charging Party*                      *Respondent*

TO WHOM IT MAY CONCERN:

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention not to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and request a waiver of initial investigation by the receiving agency.

☐ This will acknowledge receipt of the referenced charge and indicated this Agency's intention to dismiss/close/not docket the charge for the following reasons:

Typed Name of EEOC or FEPA Official
**Rocco J. Claps, Director**

Signature/Initials
*Armendola Smith (13)*

TO:    **Chicago District Office - 440**
**500 West Madison St**
**Suite 2800**
**Chicago, IL 60661**

Date    **November  27, 2006**
EEOC Charge No.
**440-2007-01346**
FEPA Charge No.



**U.S. Dep** **..ment of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

CERTIFIED MAIL
5072 9134

Ms. Linda J. Brumfield
1401 W. Irving Park Rd.,#2R
Chicago, IL  60613

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

January 10, 2008

Re:  EEOC Charge Against Chicago Police Department
      No. 440200704915

Dear Ms. Brumfield:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.  If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney.  If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires.  Your request to the Court should be made well before the end of the time period mentioned above.  A request for representation does not relieve you of the obligation to file suit within this 90-day period.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                              Sincerely,

RECEIVED EEOC

MAR 1 1 2008

CHICAGO DISTRICT OFFICE

              Grace Chung Becker
       Acting Assistant Attorney General
              Civil Rights Division

          by   *Karen J. Ferguson*

              Karen L. Ferguson
        Supervisory Civil Rights Analyst
        Employment Litigation Section

cc:  Chicago District Office, EEOC
     Chicago Police Department

EEOC FORM 131 (5/01)       **U.S. E. ..al Employment Opportunity C ..mission**

| | PERSON FILING CHARGE |
|---|---|
| ☐ Mr. **Eileen Geary**<br>**Chief Asst. Corp. Counsel**<br>**CITY OF CHICAGO**<br>**Dept. of Law**<br>**30 N. LaSalle St., Room 1020**<br>**Chicago, IL 60602** | **Linda J. Brumfield** |

| THIS PERSON *(check one or both)* |
|---|
| [X] Claims To Be Aggrieved |
| ☐ Is Filing on Behalf of Other(s) |

EEOC CHARGE NO.
**440-2007-04915**

### NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act          ☐ The Americans with Disabilities Act

☐ The Age Discrimination in Employment Act          ☐ The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. ☐ No action is required by you at this time.

2. ☐ Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **19-JUN-07** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. ☐ Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. ☐ EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by
   to
   If you <u>DO NOT</u> wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

**Donald Marvin,**
**Investigator**
_____
*EEOC Representative*

*Telephone* **(312) 353-8198**

**Chicago District Office**
**500 West Madison St**
**Suite 2800**
**Chicago, IL 60661**

Enclosure(s): [X] Copy of Charge

| CIRCUMSTANCES OF ALLEGED DISCRIMINATION |
|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN  ☐ AGE  ☐ DISABILITY  [X] RETALIATION  ☐ OTHER |

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **May 17, 2007** | **John P. Rowe,**<br>**District Director** | *John P. Rowe* |

EEOC Form 212-A (3/98)

# U.S. Equal Employment Opportunity Commission

| | |
|---|---|
| TO: | **Illinois Department Of Human Rights**<br>**100 West Randolph Street**<br>**Floor 10-100**<br>**Chicago, IL 60601** |

Date **May 17, 2007**

EEOC Charge No.
**440-2007-04915**

FEPA Charge No.

CHARGE TRANSMITTAL

SUBJECT:

| Linda J. Brumfield | v. | CHICAGO POLICE DEPARTMENT |
|---|---|---|
| *Charging Party* | | *Respondent* |

Transmitted herewith is a charge of employment discrimination initially received by the:

☒ EEOC   ☐ _____ on **May 17, 2007**

                  *Name of FEPA*                  *Date of Receipt*

[X] Pursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC.

☐ Pursuant to the worksharing agreement, this charge is to be initially investigated by the FEPA.

☐ The worksharing agreement does not determine which agency is to initially investigate the charge.

    ☐ EEOC requests a waiver         ☐ FEPA waives

    ☐ No waiver requested         ☐ FEPA will investigate the charge initially

DEPT. OF HUMAN RIGHTS

MAY 1 7 2007

RECEIVED

*Please complete the bottom portion of this form to acknowledge the receipt of the charge
and, where appropriate, to indicate whether the Agency will initially investigate the charge.*

| Typed Name of EEOC or FEPA Official | Signature/Initials |
|---|---|
| **John P. Rowe, District Director** | *John P. Rowe* |

| Linda J. Brumfield | v. | CHICAGO POLICE DEPARTMENT |
|---|---|---|
| *Charging Party* | | *Respondent* |

TO WHOM IT MAY CONCERN:

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention not to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and request a waiver of initial investigation by the receiving agency.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to dismiss/close/not docket the charge for the following reasons:

| Typed Name of EEOC or FEPA Official | Signature/Initials |
|---|---|
| **Rocco J. Claps** | *R. Smith* |

| | |
|---|---|
| TO: | **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |

Date **May 17, 2007**

EEOC Charge No.
**440-2007-04915**

FEPA Charge No.



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

CERTIFIED MAIL
5072 9134

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

January 10, 2008

Ms. Linda J. Brumfield
1401 W. Irving Park Rd., #2R
Chicago, IL  60613

Re:  EEOC Charge Against Chicago Police Department
     No. 440200801244

Dear Ms. Brumfield:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.  If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney.  If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires.  Your request to the Court should be made well before the end of the time period mentioned above.  A request for representation does not relieve you of the obligation to file suit within this 90-day period.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                    Sincerely,

                Grace Chung Becker
          Acting Assistant Attorney General
               Civil Rights Division

          by    *Karen J. Ferguson*

                Karen L. Ferguson
          Supervisory Civil Rights Analyst
          Employment Litigation Section

cc:  Chicago District Office, EEOC
     Chicago Police Department

EEOC FORM 131 (5/01)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Eileen Geary<br>**Chief Assistant Corporation Counsel**<br>**CITY OF CHICAGO**<br>**Department of Law**<br>**30 North LaSalle Street, Room 1020**<br>**Chicago, IL 60602** | **Linda J. Brumfield** |

THIS PERSON (*check one or both*)

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.
**440-2008-01244**

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act          [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act          [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [X] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by _____ a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by
to
If you <u>DO NOT</u> wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| **Donald Marvin,**<br>**Investigator** | **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |
|---|---|
| *EEOC Representative* | |
| *Telephone* **(312) 353-8198** | |

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN  [ ] AGE  [ ] DISABILITY  [X] RETALIATION  [ ] OTHER

## See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **December 11, 2007** | **John P. Rowe,**<br>**District Director** | *John P. Rowe* |

EEOC Form 212-A (3/98)

# U.S. Equal Employment Opportunity Commission

TO:     **Illinois Department Of Human Rights**
        **100 West Randolph Street**
        **Floor 10-100**
        **Chicago, IL 60601**

Date     **December 11, 2007**
EEOC Charge No.
        **440-2008-01244**

FEPA Charge No.

CHARGE TRANSMITTAL

SUBJECT:

| Linda J. Brumfield | v. | CHICAGO POLICE DEPARTMENT |
|---|---|---|
| *Charging Party* | | *Respondent* |

Transmitted herewith is a charge of employment discrimination initially received by the:

☒ EEOC     ☐ _____ on   **December 11, 2007**

                    *Name of FEPA*                          *Date of Receipt*

[X] Pursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC.

☐ Pursuant to the worksharing agreement, this charge is to be initially investigated by the FEPA.

☐ The worksharing agreement does not determine which agency is to initially investigate the charge.

DEPT. OF HUMAN RIGHTS
DEC 1 1 2007
RECEIVED

☐ EEOC requests a waiver          ☐ FEPA waives

☐ No waiver requested              ☐ FEPA will investigate the charge initially

*Please complete the bottom portion of this form to acknowledge the receipt of the charge
and, where appropriate, to indicate whether the Agency will initially investigate the charge.*

| Typed Name of EEOC or FEPA Official | Signature/Initials |
|---|---|
| **John P. Rowe, District Director** | *John P. Rowe* |

| Linda J. Brumfield | v. | CHICAGO POLICE DEPARTMENT |
|---|---|---|
| *Charging Party* | | *Respondent* |

TO WHOM IT MAY CONCERN:

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention not to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and request a waiver of initial investigation by the receiving agency.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to dismiss/close/not docket the charge for the following reasons:

| Typed Name of EEOC or FEPA Official | Signature/Initials |
|---|---|
| **Rocco J. Claps** | *Carmeenola Smith* |

TO:     **Chicago District Office**
        **500 West Madison St**
        **Suite 2800**
        **Chicago, IL 60661**

Date     **December 11, 2007**
EEOC Charge No.
        **440-2008-01244**

FEPA Charge No.