**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Linda J. Brumfield, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-2024 |
| v. | ) | |
| | ) | |
| City of Chicago, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, by and through her attorneys, Elisabeth Shoenberger and Rima Kapitan, respectfully urges this Court to deny Defendant's motion to dismiss, and in support thereof states as follows:

Plaintiff's complaint is based upon Defendant's harassing treatment, retaliatory treatment and discrimination. As such, this contact is both the basis of statutory claims and tort claims. Even a cursory view of the applicable authority shows that Plaintiff's pleadings are appropriate, and cannot be dismissed at this stage of the proceedings. Plaintiff should be allowed to re-plead any counts of her Complaint which this court finds to be infirm, and expressly seeks leave to do so.

For purposes of a motion to dismiss the Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 127 S. Ct. 2197, 2197-98 (2007). The Plaintiff in this action has adequately pled her case.

**I. Count I of Plaintiff's Complaint states a valid claim pursuant to Title VII.**

    **A.    Plaintiff's Sexual Orientation Claims are Governed by the Illinois Human Rights Act, not Title VII.**

Plaintiff does not dispute that Title VII does not provide a private right of action. Her claims with regard to sexual orientation stem from the Illinois Human Rights Act. However, Plaintiff does concede that her EEOC charges do not list sexual orientation as one of the bases of discrimination. She intends to amend her Illinois Department of Human Rights charge to reflect that she was discriminated against in part because of her sexual orientation, and then move this Court for consolidation.

    **B.    Plaintiff's claims are timely.**

Plaintiff does not allege any Title VII claims that are outside of the 300-day time limitation. To the extent that factual allegations fall outside of the 300-day limit, they are probative of Defendant's discriminatory and retaliatory intent and of the working atmosphere Defendant created. They also relate to Plaintiff's other claims and the complaint was not drafted, nor can it be logically interpreted, so as to confine them to the allegations of Count I.

**II.**

    **A.    Plaintiff's Section 1981 and 1983 claims are well-pleaded and are properly before this Court.**

Plaintiff does not dispute the City's position that a municipality cannot be held liable unless the Plaintiff can establish a constitutional injury resulting as a direct result from a municipal policy, custom or practice. *Monell v. New York City Dept. of Soc. Servs.,* 426 U.S. 658, 694 (1978). Municipalities may be held liable when acts are performed which the municipality has officially sanctioned or ordered. As the defendant cites, the Seventh Circuit has held that a

municipality must be the "moving force" directly causing the alleged injury before the municipality may be held liable. *Hulbert v. Wilhelm*, 120 F.3d 648, 656 (7th Cir. 1997).

For the purpose of this motion to dismiss, Plaintiff's burden is not severe. She can survive this motion by showing any arguable basis in law for which the claim may be made. In Plaintiff's complaint she states that her treatment can be traced back to statements she made with respect to race and that the Superintendent of Police disliked such statements. (Compl. at 5). As such she has alleged that her constitutional injury was condoned and perhaps even ordered by a person with "final policymaking authority."

Further, a bulk of her claims rise out of the City's handling of the Complaint Register procedure. "Complaint Register" is the mechanism which the City uses to charge and evaluate whether or not an officer is complying with policy policies and regulations and as such is in and of itself a policy or procedure. Finally, at the center of this case is the police department's use of the psychological testing procedures. Plaintiff was subjected to four such tests and it is her contention that the city's policy of using psychological testing in a retaliatory manner is a policy or procedure which denies her protection under the color of law. (Compl. at 22, 31, 35, 36, 40-43, 45, 47, 49-53).

### B.    Plaintiff's claims are timely.

Plaintiff does not allege any 1981 or 1983 claims that are outside of the statute of limitation. To the extent that factual allegations fall outside of the two or four year limit, they are probative of Defendant's conduct and provide a background to evaluate the claims.

**III.    Plaintiff will move to amend her complaint to allege exhaustion of administrative remedies.**

Plaintiff's charge was filed with the Illinois Department of Human Rights in addition to the EEOC.  Plaintiff will move for leave to amend her complaint to reflect that she exhausted her administrative remedies for the Illinois Human Rights Act claim.

**IV.    Plaintiff's intentional infliction of emotional distress claim is well-pleaded and properly before this Court.**

**A.    This Court has jurisdiction over Plaintiff's intentional infliction of emotional distress claim.**

Plaintiff's allegations state a claim for intentional infliction of emotional distress ("IIED") quite apart from her contention that she was discriminated against.

The mere fact that the City's treatment of Plaintiff also constituted discrimination does not mean that Plaintiff did not state a claim for IIED.  "The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached; 'that is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA . . . the IHRA does not preempt a state law claim seeking recovery for it.'"  *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 603-605 (7th Cir. Ill. 2006) (citing *Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir. 2000)).

The question is not whether the facts that support the IIED claim also support the discrimination claim, but rather whether the elements of the former claim were sufficiently alleged independent of the discrimination claim.  *Naeem v. McKesson Drug Co.*, 444 F.3d at 604.  In *Bannon*, for example, the Court opined that in addition to being viewed as an employment claim, the plaintiff's supervisor's hostile attitude towards her, regardless of his

motivation, could have caused her distress. *Bannon v. Univ. of Chi.*, 503 F.3d 623, 630 (7th Cir. Ill. 2007).

Similarly, the City's repeated harassment of Plaintiff Brumfield is actionable regardless of whether the motive was discriminatory. Plaintiff did not allege that she experienced emotional distress only because she was discriminated against, or that the only reason the City's actions were outrageous was because of the discriminatory intent behind them. Rather, reading the complaint in a light most favorable to the plaintiff, it is possible to interpret the allegations of IIED as completely independent of the allegations of discrimination.

B.    **The Illinois Workers Compensation Act does not preempt Plaintiff's claim of intentional infliction of emotional distress.**

A complainant can bring statutory and common law causes of action outside the Illinois Workers Compensation Act (IWCA) if 1) the injury was not accidental; 2) the injury did not arise from employment 3) the injury was not received during the course of employment; or 4) the injury was not compensable under the Illinois Workers Compensation Act. *Meerbury v. Marshall Field & Co.,* 151 Ill. Dec. 560 (Ill. 1990).

The injury is not deemed accidental if the employer or its alter ego intentionally causes the injury. *Ruich v. Ruff,* 837 F. Supp. 881 (N.D.Ill. 1993). Defendant claims that Plaintiff's IIED action can only be brought if the City specifically commanded or expressly authorized the actions. (Defendant Motion to Dismiss at 12). However, only in the case where a co-employee actually creates the injury must the employer have directed or expressly authorized the injury for it to be deemed "not accidental." *Contrast Meerbury v. Marshall Field & Co.* 151 Ill. Dec. at 564-565 (where the court found that a security guard's confinement of a co-employee was

"accidental" because the employer did not specifically command or explicitly authorize such action); with *Ruich v. Ruff,* 837 F. Supp. at 885 (where the court held that an employee's direct supervisor, who acted as her employer and a partner in the law firm, served as an "alter ego" to the managing partner [main employer] in unlawful discrimination and IIED).

An alter ego is not merely any superior to the injured party, but is one who practically "speaks for the company." *Crissman v. Healthco Int'nl. Inc.* 1992 WL 223820, 8 (N.D.Ill. 1992). *Also See Generally Meerbury* at 565 (where a security guard's supposed 'authority' or 'superiority' over a cashier did not impose liability for IWCA exclusion purposes unto the employer). Particularly, a superior who has an especially high authority in decision making, considering the practical needs of divisions of labor and responsibility, can be considered an employer's "alter ego". *Crissman v. Healthco Int'nl. Inc.* 1992 WL 223820 at 8 (where the court held that a company's regional manager, one of seven, who had final decision-making authority with regard to policies and procedures in a particular region, could be considered an "alter ego").

Moreover, when an employee suffers numerous instances of unlawful conduct at the hands of different superiors for an extended period of time, such conduct may be too interconnected with the company and employer to be considered "accidental" for purposes of the IWCA exclusion. *Compare Jablonski 63 Ill. App. 3d 908* (where a co-employee/manager intentionally assaulted another employee in one instance, there was no evidence that the co-employee/manager acted as an alter-ego to the employer) with *Crissman v. Healthco Int'n'l. Inc.* 1992 WL 223820 (where both a direct supervisor and human resources representative made repeated intentional offenses, the IWCA did not consider such actions "accidental" on the part of the employer) and *Hangebrauck v. Zenith Electronics*, 48 F.E.P Cases 1249, 1252-53 (N.D.Ill. 1988) (where a middle-ranked supervisor and various other employees discriminated against the

plaintiff consistently for eight months so as to even directly attach to the employer a "continuous policy of discrimination" against the plaintiff).

Injury was not Compensable under the IWCA

Furthermore, in addition to non-accidental claims, claimants can bring separate causes of action alongside the IWCA if the injury is not compensable under the IWCA. Even when emotional distress claims are barred by the IWCA, "an employee who is uncertain of his grounds for recovery, and has filed for compensation under the Act, may file a common law action." *Johnson v. Federal Reserve Bank of Chicago*, 199 Ill. App. 3d 427 (1st Dist. 1990), (citing *Witham v. Mowery*, 161 Ill.App.3d 322 (4th Dist. 1987)).

While some courts have highlighted that IWCA does provide for IIED, other courts have disagreed. *Compare Id.* at 433- 434 with *Meerbury v. Marshall Field & Co.* 151 Ill. Dec. at 566. At best, therefore, whether an employee may recover for an IIED claim is, at best, uncertain.

Plaintiff Brumfield alleges that several individuals with authority discriminated against her, and on several occasions. Plaintiff alleged that a captain and a lieutenant in the department engaged in several tortuous acts against her directly. (Compl. at 19, 22, 44-45). In at least one instance she requested Superintendent Review of a disciplinary action and was not granted that review but rather was forced to serve 20 days of suspension. (Compl. at 31). So, high-ranking officers within the Department, and even the Superintendent himself, participated in the discrimination. In addition, Plaintiff alleged that the City's disciplinary mechanism was used against her repeatedly, and that she was forced to take four psychological examinations. (Compl. at 30, 31, 35-6, 40, 42-3, 47, 52). These are not allegations that a co-worker mistreated her, but rather that the City itself mistreated her. So, Plaintiff alleges that she was mistreated not only by

high-ranking individuals within the department, but repeatedly. Therefore, she alleges that her injury was not accidental.

Moreover, it is at best uncertain that Plaintiff would be permitted recovery under the IWCA. Therefore, Plaintiff is not preempted from bringing a common-law claim in tort.

### C.    Plaintiff has stated a claim for intentional infliction of emotional distress.

The purpose of the pleading requirements of the Federal Rules of Civil Procedure is to ensure that the complaint provides defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The Rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim'" sufficient to apprise defendant of the claim's nature and basis. *Conley v. Gibson*, 355 U.S. 41, 47 (U.S. 1957) (citing Fed. R. Civ. P. 8(f)). In ruling on 12(b)(6) motions to dismiss, Courts construe factual allegations in the light most favorable to the plaintiff. *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998).

Plaintiff sufficiently stated an IIED claim. IIED has taken place "'where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. . . .'" *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702-703 (7th Cir. Ill. 1993) (citing *Public Fin. Corp. v. Davis*, 66 Ill. 2d 85, 360 N.E.2d 765, 767, 4 Ill. Dec. 652 (Ill. 1976)). However, "Illinois courts have found extreme and outrageous behavior to exist in the employer/employee context when the employer 'clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment.'" *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. Ill. 2006) (citing *Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001).

In *Bannon*, the Court deemed the plaintiff's allegations insufficient to rise to the level of IIED. The conduct in question was not extreme and outrageous when the employee was "denied the responsibility of organizing meetings, being forced to attend a few unpleasant sessions with Argonne's general counsel that led to no disciplinary action, and having a mean boss . . . ." *Bannon*, 503 F.3d at 630. In *Naeem*, however, the Court ruled that a reasonable jury could find that a plaintiff had been subjected to IIED when she was forced to climb up an unstable stairway, denied access to her computer files, and prevented from meeting deadlines. *Naeem*, 444 F.3d.at 606.

Plaintiff Brumfield was subjected to outrageous employer conduct. She was purposely falsely accused and subjected to several unjustified disciplinary actions, subjected to four demanding psychological examinations which members of the Department generally do not pass, followed around by her supervisor, suspended from the Department, forced to go on dangerous calls without assistance, yelled at and sworn at, forced to drive an unsafe vehicle, physically assaulted by a supervisor, and stripped of her police powers. (Compl. at 19, 22-3, 29-31, 35, 36, 40, 42, 44-45, 47, 51-2).

Unlike the plaintiff in *Bannon*, Plaintiff Brumfield is alleging that the conduct led to disciplinary action. Far from simply having a "mean boss," the alleged conduct of Plaintiff's supervisors jeopardized her safety and went far beyond the normal indignities and inconveniences one would expect to experience at work. Like the plaintiff in *Naeem*, Plaintiff was forced by a supervisor to perform an unsafe activity in the workplace. She was not merely prevented from organizing meetings; she was stripped of her police powers, which prevented her from performing the essential functions of a police officer. She was suspended from her job, which amounted to more than an indignity and amounted to a loss of livelihood.

Two factors that, viewed in conjunction, affect a determination of whether conduct was extreme and outrageous are whether the defendant has power and control over the plaintiff and "whether the defendant reasonably believed that his objective was legitimate." *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 745-746 (Ill. App. Ct. 1st Dist. 2000).

Here, Defendant, as Plaintiff's employer, certainly had power and control over her, and substantially all of the conduct alleged was undertaken by individuals with supervisory power over Plaintiff. For example, Plaintiff's supervisor forced to drive an unsafe vehicle, and another supervisor filed a complaint against her for the sole purpose of harassing her. (Compl. at 22, 44-45).

In addition, there was no legitimate purpose to the complained-of conduct; for example, Plaintiff alleges that the disciplinary actions were taken without justification. (Compl. at 11). Moreover, there could be no possible justification for forcing Plaintiff to drive an unsafe vehicle or denying her assistance on dangerous calls when others were not denied that assistance. (Compl. at 23, 44).

Accordingly, Plaintiff respectfully requests that Defendant's motion to dismiss be denied.

                                                            Respectfully submitted,

s/ Elisabeth Shoenberger                                    s/ Rima Kapitan

Elisabeth Shoenberger                                       Rima N. Kapitan
Shoenberger Law Offices                                     Amal Law Group, LLC
2036 W. Cuyler                                              7804 College Drive, Suite 3N
Chicago, IL  60618                                          Palos Heights, IL  60463
(773) 892-2122                                              (708) 361-3600
Fax: (773) 404-5794                                         Fax: (708) 361-3674
Attorney #: 6243879                                         Attorney #: 6286541
Shoenberger@earthlink.net                                   rkapitan@amallaw.com

<u>Certificate of Service</u>

I, Elisabeth Shoenberger, hereby certify that on July 29, 2008 I filed electronically a Response to Defendant's Motion to Dismiss, which constitutes service to Robert Rutherford, Jr., Marcela Sanchez and Diane Cohen, who are registered participants of the CM/ECF system.

Respectfully Submitted,

<u>s/Elisabeth Shoenberger</u>