IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA J. BRUMFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 2024 |
| | ) | |
| v. | ) | Judge Leinenweber |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT CITY OF CHICAGO'S ANSWER AND DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant City of Chicago ("City"), by its attorney Mara S. Georges, Corporation Counsel of the City of Chicago, answers Plaintiff's Second Amended Complaint ("Amended Complaint") as follows:

1. This is a civil action arising under Title VII of the Civil Rights Act of 1964, as amended. Plaintiff invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367 to assert a claim of discrimination on the basis of sexual orientation under the Illinois Human Rights Act.

**ANSWER:** The City admits that plaintiff purports to bring this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended. The City moved to dismiss plaintiff's claims purportedly arising under state law, and thus makes no answer to the allegations in the second sentence of paragraph 1.

2. Plaintiff Linda J. Brumfield is an African-American female resident of the Northern District of Illinois.

**ANSWER:** The City admits that plaintiff is female and, based on City personnel records completed by plaintiff, that plaintiff identified her race as African-American. The City is

without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 2.

    3.    On October 25, 1999, plaintiff began to be employed as a police officer by defendant, City of Chicago.

**ANSWER:**    The City admits the allegations in paragraph 3.

    4.    Starting before February 1, 2006 and continuing throughout her employment with the City of Chicago, plaintiff was subjected to various wrongful acts by defendant and its employees on account of one or more of plaintiff's race, sex, sexual orientation, and retaliation for the filing of complaints of discrimination with the EEOC. These acts include, but are not limited to, the following:

**ANSWER:**    The City denies the allegations in paragraph 4.

    a.    On December 12, 2005, a Chicago police sergeant spoke with plaintiff about her use of a "10-1" code during an incident that had occurred in November of 2005. In the course of this discussion, the sergeant, who is a white male, told plaintiff that she looked like a member of the African-American criminal class when she work an official Chicago Police Department knit cap.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4(a).

    b.    In January of 2006, the Chicago police sergeant referred to in the preceding paragraph told plaintiff that her signature, as it appeared on official Chicago police reports, brought to his mind an illiterate African-American affixing an "X" as their signature.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4(b).

    c.    In April of 2006, plaintiff was assigned to assist an official Chicago police department investigation of a criminal sexual assault of a minor.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4(c).

    i.    Plaintiff was assigned to this investigation because of her race and sex.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4(c)(i).

    ii.    As a result of plaintiff's efforts, an alleged offender was identified and arrested.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4(c)(ii).

    iii.    At the direction of the supervisor referred to in paragraph 4(a) above, plaintiff's name and involvement were omitted from the official Chicago police reports of the investigation.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4(c)(iii).

    iv.    Plaintiff sought to remedy this error when she learned that name had been omitted from the reports.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4(c)(iv).

    v.    As a result of plaintiff's efforts to remedy the above referred error, plaintiff was referred in June of 2006 for a mandatory psychological examination and became the subject of a disciplinary complaint.

**ANSWER:** The City admits, based on City records, that plaintiff was required to undergo a psychological examination, that she was notified of that requirement on or about June 9, 2006, and that the Chicago Police Department has initiated a number of complaint register investigations against plaintiff. The City is without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 4(c)(v).

    vi.    The psychological examination resulted in a finding that plaintiff was fit to work as a police officer.

**ANSWER:** The City admits, based on City records, that plaintiff was found "fit for duty" after the June 2006 evaluation.

>   vii.   Plaintiff is currently suspended without pay as a result of the above referred disciplinary complaint.

**ANSWER:** The City admits, based on City records, that the plaintiff is currently suspended without pay. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 4(c)(vii).

>   d.   On January 20, 2007, plaintiff was suspended for one day for allegedly being "inattentive to duty" arising out of an incident in which an arrestee had been found in possession of contraband. Two white male officers had actually been "inattentive" to duty during this incident; neither of these two white officers was disciplined.

**ANSWER:** The City admits, based on City records, that plaintiff was suspended for one day as a result of a charge that alleged that plaintiff was inattentive to duty in that plaintiff failed to properly search a female prisoner, and that the prisoner was found to be in possession of contraband. The City denies the remaining allegations in paragraph 4(d).

>   e.   On February 9, 2007, plaintiff was ordered to submit to a second mandatory psychological examination. Plaintiff complied with this order; the psychologist who conducted the examination concluded that plaintiff was fit for duty but was being subjected to unusual workplace-related stress.

**ANSWER:** The City admits, based on City records, that plaintiff was required to undergo a psychological examination in February 2007, and that plaintiff was found to be "fit for duty" after this examination. The City denies the remaining allegations in paragraph 4(e).

>   f.   On May 10, 2007, plaintiff was ordered to submit to a third mandatory psychological examination. Plaintiff complied with this order; the psychologist who conducted the examination again concluded that plaintiff was fit for duty but was being subjected to unusual "situational stressors" in her workplace.

**ANSWER:** The City admits, based on City records, that plaintiff was required to undergo a psychological examination in May 2007, that plaintiff was found to be "fit for duty" after this examination, and that the examiner stated that "testing and [plaintiff's] report suggest that she is experiencing some situational stressors." The City denies the remaining allegations in paragraph 4(f).

      g.    On May 25, 2007, plaintiff was suspended for eight days as the result of an incident in which plaintiff had been taunted and attacked by another police officer. The other officer, who is a white female and who initiated the incident, was not disciplined.

**ANSWER:** The City admits, based on City records, that in May 2007 plaintiff was notified that she would be suspended for eight days for having engaged in an "unjustified altercation while on duty," and that the other officer involved in the altercation was a white female. The City denies the remaining allegations in paragraph 4(g).

      h.    On July 3, 2007, plaintiff was involved in an off-duty incident of the type that, for white police officers, would not have resulted in any discipline or would have resulted in a suspension of less than thirty days. Because of plaintiff's race and or sex, defendant stripped plaintiff of her police powers and requested the Chicago Police Board to fire plaintiff. Although the Board refused to fire plaintiff, it ordered that she be suspended for seven months.

**ANSWER:** The City admits, based on City records, that on July 3, 2007, plaintiff was involved in an off-duty incident, and that as a result of that incident, the Chicago Police Department filed charges seeking plaintiff's termination before the Chicago Police Board. The City further admits, based on City records, that the Chicago Police Board declined to terminate plaintiff's employment, but ordered that plaintiff be suspended for more than six months and that plaintiff undergo psychological evaluation, counseling, and treatment. The City further states that the Chicago Police Board's decision is currently being appealed. The City denies the remaining allegations in paragraph 4(h).

      i.    On July 31, 2007, defendant ordered plaintiff to submit to a fourth mandatory psychological examination. Plaintiff complied with this order; the psychologist who conducted the examination again concluded that plaintiff was fit for duty but was vulnerable to "workplace stress."

**ANSWER:** The City admits, based on City records, that plaintiff was required to undergo a psychological examination in August 2007, that plaintiff was found to be "sufficiently stabilized to be cleared psychologically to return to work," and that the examiner stated that "it needs to be kept in mind [plaintiff's] vulnerability to workplace stress and the possibility that she will continue to have periods in which she will not be able to function." The City denies the remaining allegations in paragraph 4(f).

      j.    On August 23, 2008, defendant suspended plaintiff without pay in connection with the incident referred to in paragraph 4(c) above.

**ANSWER:** The City admits, based on City records, that plaintiff was placed in a suspension without pay status, starting August 23, 2008. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 4(j).

      k.    Plaintiff continued to be suspended without pay at the time of the filing of this second amended complaint.

**ANSWER:** The City admits, based on City records, that plaintiff was placed in a suspension without pay status, starting August 23, 2008 and continuing through July 17, 2009.

5.    As a result of the foregoing, plaintiff has been denied equal employment opportunities on account of one or more of her race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended.

**ANSWER:** The City denies the allegations in paragraph 5.

6.    In 2005, defendant learned that plaintiff is a lesbian. Insofar as defendant has discriminated against plaintiff as a result of her sexual orientation, plaintiff has been deprived of rights secured to her by the Illinois Human Rights Act.

**ANSWER:** The City has moved to dismiss plaintiff's claims purportedly arising under state law, and thus makes no answer to the allegations in paragraph 6.

      7.      As a result of the foregoing, plaintiff was suffered economic loss and has incurred severe emotional distress.

**ANSWER:**    The City denies the allegations in paragraph 7.

WHEREFORE, defendant City of Chicago respectfully requests that this Court enter judgment in its favor on plaintiff's Amended Complaint, award defendant such costs and fees as allowed by law, and grant such further relief as this Court deems just and proper.

### DEFENDANT CITY OF CHICAGO'S ANSWER TO PLAINTIFF'S AMENDMENT TO SECOND AMENDED COMPLAINT

    A.    Plaintiff filed charges of discrimination with the EEOC on:
        i.    November 27, 2006, number 440-2007-01346

**ANSWER:**    The City admits, based on charge number 440-2007-01346, that plaintiff appears to have filed that charge with the Equal Employment Opportunity Commission ("EEOC") on November 27, 2006.

        ii.    May 17, 2007, number 440-2007-04915

**ANSWER:**    The City admits, based on charge number 440-2007-04915, that plaintiff appears to have filed that charge with the EEOC on May 17, 2007.

        iii.    December 11, 2007, number 440-2008-01244

**ANSWER:**    The City admits, based on charge number 440-2008-01244, that plaintiff appears to have filed that charge with the EEOC on December 11, 2007.

        iv.    September 5, 2008, number 440-2008-08071

**ANSWER:**    The City admits, based on charge number 440-2008-08071, that plaintiff appears to have filed that charge with the EEOC on September 5, 2008.

    B.    The United States Department of Justice issued a notice of right to sue on charge numbers 440-2007-01346, 440-2007-04915, and 440-2008-08071 on January 10, 2008.

**ANSWER:** The City admits that the U.S. Department of Justice issued plaintiff Right-to-Sue letters for Charge Numbers 440-2007-01346 and 440-2007-04915, and that the date on those Right-to-Sue letters is January 10, 2008. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph B.

    C.    The United States Department of Justice issued a notice of right to sue on charge number 440-2008-08071 on October 8, 2008.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph C.

    D.    Plaintiff commenced this action within 90 days of receipt of her first notice of right to sue.

**ANSWER:** The City admits that plaintiff's initial complaint in this matter was filed on April 9, 2008. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph D.

## JURY DEMAND

The City demands a trial by jury.

## AFFIRMATIVE DEFENSES

1. All matters in plaintiff's Amended Complaint that are not within the scope of the underlying EEOC charges are barred for failure to meet the administrative prerequisites for suit under Title VII.

2. To the extent that plaintiff relies on events allegedly occurring more than 300 days prior to the filing of her EEOC charges, plaintiff's claims under Title VII based on those events are time-barred.

3.      If plaintiff was subjected to a hostile work environment under applicable law, the City is not liable because it is entitled to establish and will prove the affirmative defense set out in *Burlington Indus., Inc. v. Ellerth*, 542 U.S. 742, 118 S.Ct. 2257 (1998) and its progeny.

4.      To the extent that plaintiff has failed to make reasonable efforts to mitigate her alleged damages, she is not entitled to an award of damages.

5.      To the extent that plaintiff has failed to mitigate her mental and emotional distress by seeking appropriate treatment and assistance, she is not entitled to an award of emotional distress damages.

DATED: September 11, 2009

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel of the City of Chicago

By:   /s/ Lee Ann Rabe
LEE ANN RABE
MARCELA D. SÁNCHEZ
Assistants Corporation Counsel

Employment Litigation
30 North LaSalle Street, Suite 1020
Chicago, Illinois 60602
312/ 744-1566
312/ 744-9653